**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Nathaniel Smith THURSTON, Jr., and**
**Freddie Lee Stewart,**
**Defendants-Appellants.**

Nos. 84–1902, 84–1903.

United States Court of Appeals,
Tenth Circuit.

Aug. 23, 1985.

**450**

Thomas D. McCormick, Oklahoma City, Okl., for defendants-appellants.

Ted A. Richardson, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, Oklahoma City, Okl., U.S. Atty., with him on the brief), for plaintiff-appellee.

Before McKAY and DOYLE, Circuit Judges, BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a), Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This case involves the stabbing of an inmate in the Federal Correctional Institution at El Reno, Oklahoma. On March 6, 1984, a grand jury returned a two count indictment against the defendants Nathaniel Smith Thurston and Freddie Lee Stewart, both of whom were inmates at the El Reno correctional facility. The first count charged the defendants with aiding and abetting to commit an assault with a dangerous weapon upon an inmate, Gordon Russell, in violation of Title 18 U.S.C. Sections 2 and 113(c). The second count charged the defendants with aiding and abetting to convey from place to place within the correctional facility a weapon which was designed to kill, injure, or disable an employee, officer, or inmate of that facility in violation of 18 U.S.C. Sections 2 and 1792. The defendants were jointly tried to the same jury. Both defendants were convicted on Count II; and only Thurston was convicted on Count I of the assault charge.[1] The defendants have assert-

---

* The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas is sitting by designation.

1. One of the verdict forms provided by the district court read: We, the jury, duly empaneled and sworn in the above entitled cause do upon our oaths, find the defendant Freddie Lee Stewart .... guilty of Count I of the Indictment. ROA Vol. I at page 62. The jury was instructed to "write in the word 'NOT' in the space" provided should it find the defendant Stewart not guilty on this count. ROA Vol. I at page 58. The returned verdict form, signed by the jury foreman, indicates that the blank space was not filled in. ROA Vol. I at page 62. For reasons that were not apparent in the record, the jury unanimously changed its verdict of guilty on Count I against Stewart to "not guilty" when the district court on its own motion polled the jury. The following colloquies appeared on pages 165–167 of the trial transcript. ROA Vol. IV.

The Court: Has the jury reached a verdict?
The Foreman: We have.
The Court: The clerk will read the verdicts.
The Clerk: Criminal Case 84–46, United States of America versus Nathaniel Smith Thurston and Freddie Lee Stewart.
We, the jury, duly empaneled and sworn in the above entitled case, do upon our oaths, find the Defendant, Freddie Lee Stewart, not guilty of Count One of the Indictment, dated April 17, 1984, signed James Foster, Foreman.
We, the jury, duly empaneled and sworn in the above entitled cause, do, upon our oaths, find the Defendant, Nathaniel Smith Thurston, guilty of Count Two of the Indictment, dated April 17, 1984, signed by James Foster, Foreman.
We, the jury, duly empaneled and sworn in the above entitled cause, do upon our oaths, find the Defendant, Nathaniel Smith Thurston, guilty of Count One of the Indictment, dated April 17, 1984, signed James Foster, Foreman.

ed a number of questions as to sufficiency of the evidence and other evidentiary rulings before and at the trial. We find the defendants' contentions to be without merit; and accordingly, we sustain the convictions.

We set out the facts in light offered by the Government and as obviously believed by the jury in reaching its verdicts. On January 3, 1984, just a few minutes past 6:00 a.m. after the cell doors had been unlocked, inmates Charles Kelvin Smith and William Culp, who were in the television room on the first floor, heard shouting and screaming coming from the second floor. As they looked in the direction of the cries, they saw an inmate with a knife in his right hand being violently pushed out of the victim Gordon Russell's cell. They recognized this inmate and later Smith identified him in a photographic display as defendant Nathaniel Smith Thurston, whom they had seen several times in the correctional facility. They saw Thurston turn to his left and ran toward the end of the building on the second floor. He then turned around and ran back toward the shower area with the knife still in his hand. He stopped at the shower area momentarily and then ran down the stairs to the first floor, passing within three feet of the witness inmate Smith.

A guard found in a shower stall, close to where the victim had been stabbed, a dark blue "skull cap" made from a piece of underwear and an eight-inch long "shank" —a prison-made knife—wrapped with masking tape on one end. Thurston was the only inmate known to wear a similar skull cap. A fingerprint expert from the Federal Bureau of Investigation identified the fingerprints on the adhesive side of the masking tape used to bind the knife as the fingerprints of defendant Stewart. Thurston called an alibi witness, who stated that he was present with Thurston at the time of the incident and that Thurston never had or handled the knife used in the assault. Stewart did not testify or present any evidence on his behalf.

The defendants contend that there was insufficient evidence to sustain the jury's finding of guilty on Count II, the charge of conveying a dangerous weapon from place to place within the correctional facility. Stewart contends that the evidence of his fingerprints on the knife was inconclusive

---

We, the jury, duly empaneled and sworn in the above entitled cause, do, upon our oaths, find the Defendant, Freddie Lee Stewart, guilty of Count Two of the Indictment, dated April 17, 1984, signed James Foster, Foreman.

The Court: Let me see that.

Ladies and Gentlemen, the verdicts reflect that and are signed by the foreman that you have found the Defendant, Nathaniel Smith Thurston, Jr., guilty of Count One and Count Two of the Indictment, and that you have found the Defendant, Freddie Lee Stewart, guilty as to Count Two and not guilty as to Count One. Let me ask if those are the verdicts of each of the jurors concurring. And, if so, please raise your right hand.

The record will reflect that the jury answered my question by each juror raising their right hand that each of those were their verdicts. Now, before I excuse the jury, anything further?

Mr. Richardson: Nothing on behalf of the Government.

Mr. Lobaugh: No, sir.

Mr. McCormick: No, sir.

(Thereafter, the jury was excused.)

Without deciding the appropriateness of its action, we accept the jury's verdicts announced by the district court by resolving the apparent inconsistencies in favor of the versions based on the result from polling the members of the jury, which was confirmed by their unanimous concurrence in them. We also note there are two irregularities in each of the Judgment and Commitment Orders. First, Rule 32(b)(1), F.R. Crim.P., requires that a "judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence." If the defendant is found not guilty, a judgment shall be signed by the district judge and entered by the clerk of the court accordingly. *Id.*, *see also* Rule 55, F.R.Crim.P. It does not appear in the Judgment and Probation/Commitment Order for Freddie Lee Stewart that it contains any reference of disposition in finding him "not guilty" on Count I of the Indictment. ROA Vol. I, at page 67. Second, each of the Judgment and Probation/Commitment Orders contains an erroneous notation, indicating that each of the defendants pled guilty to the counts of convictions. ROA Vol. I, at pages 66 and 67. We find the record shows the contrary and none of these irregularities has affected the substantial rights of the parties in the trial or on appeal. Rule 52(a), F.R.Crim.P.

to support a verdict on the conveyance charge. Thurston points to the conflicting evidence that on the one hand it shows he carried the knife from the victim's cell to the shower area where it was disposed of and on the other his fingerprints were not found on the knife. Thurston also argues that there was no direct proof, other than the testimony that he was forcibly thrown out of the victim's cell amidst the excruciating cries, to support a finding of guilty on Count I that he committed the assault upon inmate Gordon Russell.

■■■ In reviewing a claim of insufficiency of evidence to support a jury's verdict of conviction, this Court does not sit as a trier of fact in a *de novo* trial. Rather, the standard of review for claims of insufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1970) (emphasis in original). We defer to the findings of a jury, whose function as a trier of fact was to weigh the evidence and to determine whether "a witness spoke the truth or fabricated a cock-and-bull story." *United States v. Bailey*, 444 U.S. 394, 414–415, 100 S.Ct. 624, 636–637, 62 L.Ed. 575, 593 (1980). Circumstantial evidence is entitled to the same weight as that given to direct evidence in determining the sufficiency of the evidence to support a verdict of conviction beyond a reasonable doubt. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150, 1676–1677 (1954).

■■■ The Government irrefutably established that Thurston came out of the victim's cell with a knife in his right hand. As he ran down the walkway, he disposed of the knife in the shower area where it was later discovered. Stewart's fingerprints were found and identified on the tape used to bind one end of the "shank" on the handle. Stewart knew the locations of the wounds inflicted upon the victim. In addition to the testimonial evidence that Thurston carried the knife from the victim's cell to the place of discovery, the jury could have inferred from the evidence that the defendants aided and abetted each other in an earlier conveyance of the knife to the victim's cell where it was used in the assault. *United States v. Bedwell*, 456 F.2d 448, 449 (10th Cir.1972). Thurston's flight from the victim's cell with a knife in his right hand was "strong indicia of *mens rea*," *Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–1905, 20 L.Ed.2d 917, 936–937 (1968), from which the jury could have reasonably inferred that he participated in the assault. We find each defendant's contentions of insufficient evidence of guilt to be without merit.

■■■ Thurston next contends that the district court erred in denying his pre-trial motion to suppress the pre-indictment identitfication testimony of witness Charles Kelvin Smith. Thurston claims that the pre-indictment indentification procedures used by the F.B.I. agent, Bill Brown who was assigned to investigate the stabbing incident, were unnecessarily suggestive, tainting the subsequent in-court identification testimony by eye witnesses Charles Kelvin Smith and William Culp. Thurston's specific complaint that the identification procedures were impermissibly suggestive was that his photograph was the only one of the six blacks who appeared in the photographic display which had a beard and whose hair was braided.

■■■ Pared to its essence, the pre-indictment identification procedures are governed by the due process standard. *Kirby v. Illinois*, 406 U.S. 682, 690–691, 92 S.Ct. 1877, 1882–1883, 32 L.Ed.2d 411, 418 (1972). A pre-indictment confrontation conducted in a manner which is "so unnecessarily suggestive and conducive to irreparable mistaken identification" violates the due process right of an accused, *Stovall v. Denno*, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967), and a subsequent in-court identification may be excluded if "the suggestive procedures gave rise to a substantial likelihood of irreparable misidentification." *Sim-*

*mons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). Thus, even if the identification procedures were found suggestive, the "central question (is) whether under the 'totality of the circumstances' the identification was reliable," *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 411 (1972), for "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977). In assessing the reliability of the identification testimony, the Supreme Court has identified five factors among the totality of the circumstances to justify its admission at trial. They are:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers, supra.* The Court must balance these five indicia of reliability against the "corruptive effect" of the identification procedures to determine whether the in-court identification testimony should have been admitted. *Manson v. Brathwaite, supra.*

Applying the five-factor analysis to the facts of the case before us, we conclude, in the light of the totality of the circumstances, that the identification procedures were not unduly suggestive or in violation of defendant Thurston's due process right. Charles Kelvin Smith had a good opportunity to observe the series of events following an inmate who had been pushed out, falling backward, from the victim's cell. This inmate, whose hair was covered by a blue "skull cap," had a knife in his right hand. He saw this inmate roam back and forth on the catwalk of the second floor, stopping momentarily at the shower area, and then run down the stairs to the first floor, passing Smith within three feet of his view. At the time when these series of events were occurring, the lighting conditions were ade-

quate for Smith to recognize the inmate as a person whom he had seen several times in the correctional facility. Smith's prior description of the inmate to Agent Brown was fairly detailed and reasonably accurate, although Smith did not remember whether the inmate had a beard or knew his name. Smith described the inmate as a black man of five feet seven or eight inches tall, between 150 and 160 pounds in weight, wearing a green raincoat, a blue shiny "skull cap," and a pair of "fatigue pants." Within four hours after the stabbing incident, Smith selected the defendant's photograph from one of the six displayed by Agent Brown, and identified the defendant as the person whom Smith saw come out of the victim's cell with the knife in his right hand.

After comparing the defendant's photograph with those five mug shots used in the photographic display, we find that Thurston's general complexion and facial profile fairly resembles those of the other subjects in the photospread, all of whom were blacks. We cannot say that it was unduly suggestive because his picture was the only one among the display exhibits which had a beard. Nor can we accept Thurston's argument that he was singled out because he was the only one whose hair appeared in the photograph was braided. Smith's initial description to Agent Brown was that his hair was covered by a "skull cap." Weighing these five factors of reliability against any "corrupting effect" from the identification procedures utilized by the investigating agent, we are convinced that the identification testimony was sufficiently reliable to justify its admission at trial and the district court did not err in denying Thurston's pre-trial motion to suppress this identification testimony.

■ The final claim of error raised by Thurston does not require extended discussions. Thurston contends that the district court erred in admitting the evidence concerning his motive for partaking in an attack on victim Gordon Russell. Upon an objection by Thurston's counsel, the

Government at a side-bar conference proposed to offer Agent Brown's testimony that Thurston had a motive to attack Russell because Thurston believed Russell had posted on the bulletin board a three by five card which contained the biographical information of Thurston identifying him as a government informant. The only testimony solicited by the Government before the jury was that this three by five card had been posted. The district court sustained defendant Thurston's objection and excluded further evidence on motive on the basis of hearsay.

Rule 404(b), F.R.Evid., provides that evidence of wrongful acts may be admissible for limited purposes to show, among other things, "motive," "intent," or "plan." *See generally United States v. Burkhart,* 458 F.2d 201 (10th Cir.1972) (*en banc*). A trial judge has broad discretion to determine whether, under Rule 403, F.R.Evid., the probative value of the extrinsic evidence outweighs the risk of unfair prejudice. *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). The Government tendered the evidence of the three by five card for the purpose of showing Thurston's motive in carrying out his vendetta against Russell, whom Thurston believed had disseminated his biographical information linking him to the Federal Witness Program. We believe the proffered evidence on motive was relevant and not unduly prejudicial. We find no merit in the defendant Thurston's assertion that the admission of the three by five card deprived him of a fair trial, since the district court sustained his objection to any further evidence on motive.

Accordingly, the judgment of conviction for each of the defendants is AFFIRMED.