**Clarence L. GRUBBS, Petitioner,**

v.

**Robert L. HANNIGAN, et al., Respondents.**

**No. 89–3142–S.**

United States District Court, D. Kansas.

Aug. 22, 1991.

As Corrected Aug. 27, 1991.

Clarence L. Grubbs, pro se.

Kyle G. Smith, Asst. Atty. Gen., Topeka, Kan., for respondents.

MEMORANDUM AND ORDER

SAFFELS, District Judge.

Petitioner, currently an inmate at Hutchinson Correctional Facility, Hutchinson, Kansas, proceeds on a petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner was convicted of two counts of rape and two counts of aggravated robbery. The charges covered two separate incidents, involving two separate vic-

tims, T.J. and S.S. Petitioner challenges the sufficiency of the evidence supporting the convictions, and claims the convictions resulted from violations of his constitutional rights to due process. The Kansas Supreme Court reviewed petitioner's claims and affirmed the convictions. *State v. Grubbs*, 242 Kan. 224, 747 P.2d 140 (1987). Petitioner now seeks federal habeas corpus relief.

In the present case, petitioner raises two issues of whether his criminal convictions resulted from violations of his rights under the federal constitution. First, petitioner claims that no rational jury could have found beyond a reasonable doubt that petitioner was guilty of the rape of T.J., given the serological evidence presented to the jury. Second, petitioner claims that the photo lineup presented to S.S. was so impermissibly suggestive that the identification of petitioner by S.S. was unreliable and tainted all further identification by that victim. Both issues involve the question of whether the evidence supporting the convictions was sufficient to satisfy due process.

■ A state prisoner who alleges there was insufficient evidence to support his state conviction has stated a federal constitutional claim. *Jackson v. Virginia*, 443 U.S. 307, 321, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979). For petitioner to be entitled to federal habeas corpus relief, this court must view the evidence in the light most favorable to the prosecution, and find that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Chatfield v. Ricketts*, 673 F.2d 330 (10th Cir.), *cert. denied*, 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88 (1982).

■ We now turn to petitioner's first issue regarding the serological evidence which excluded petitioner as the person who raped T.J.[1] There is no question raised in the case over the admissibility of the serological results. Rather, the issue involves the weight to be given to such testimony. Specifically for this court, the issue is whether the test results were so contrary to finding petitioner guilty of raping T.J. that the evidence supporting that conviction would not convince any rational trier of fact of petitioner's guilt. The court appreciates the strength of the exclusionary weight of the serological evidence, especially as the repeat test produced identical results, but finds the *Jackson* standard was satisfied and no due process violation resulted from the jury's verdict.

The State's forensic witness testified that the enzymatic and electrophoretic blood test results excluded petitioner as the person who raped T.J.[2] To the contrary, however, T.J. positively identified petitioner as the person who raped her. The rape did not occur under darkened conditions; the offender was not masked or disguised; and T.J. had ample time and opportunity to observe the offender. The jury essentially had to consider and weigh the serological results, combined with petitioner's evidence of alibi, against T.J.'s testimony and other supporting physical evidence. The court finds sufficient support in the record for the jury's verdict.[3] *Compare, Robinson v.*

1. This issue is limited to the conviction for the rape of T.J., as the blood test results were not inconsistent with petitioner being the person who attacked S.S.

2. PGM (polymorphic enzyme analysis) testing showed T.J. as PGM type $1+$; petitioner as PGM type $1+1-$; and the test swab taken after the rape from T.J. as PGM type $2+1+$. The parties stipulated that there was no possibility of a prior donor as a source to explain the results from the test swab.

3. The court does not accept petitioner's argument that the blood test results in the present case should be treated as conclusively as blood test results which establish nonpaternity in civil actions. First, blood group test results are not at issue, as in *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1980). Petitioner acknowledges that multi-serum serological analysis is not as universally accepted as traditional blood grouping testing. Second, the admissibility of the blood test result, rather than the conclusivity of negative result, is not at issue as it is in cases cited by petitioner. *See e.g. State ex rel. Hausner v. Blackman*, 233 Kan. 223, 662 P.2d 1183 (1983) (although blood grouping test results not conclusive evidence for establishing paternity, is *admissible* evidence of nonpaternity). *State v. Onken*, 701 S.W.2d 518 (Mo. App.1985) (issue of *admissibility* of blood analysis test results, dicta that mismatch between victim and defendant would have been conclusive); *State v. Carillo*, 122 R.I. 392, 407 A.2d 491

*State,* 462 So.2d 471 (Fla.App. 1 Dist.1984) *rev. denied,* 471 So.2d 44 (1985) (PGM test results indicating impossibility of defendant being involved in sexual battery of victim did not vitiate legal sufficiency of victim's eyewitness identification and testimony, but did bear heavily on victim's credibility and weight of evidence supporting verdict); *State v. Mower,* 50 Or.App. 63, 622 P.2d 745, *rev. denied,* 290 Or. 651 (1981) (comment that evidence showing blood on defendant's clothing was not victim's blood would not be conclusive evidence of innocence).

■ As for petitioner's second issue, the court finds the identification of petitioner by the two victims did not involve constitutional error. To determine whether the pre-trial identification of petitioner from the photo lineups was impermissibly suggestive, the factors to be considered are: (1) opportunity of the witness to observe the criminal at the time of the crime; (2) the degree of attention of the witness at the time of the crime; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at pretrial confrontation; and (5) the length of time between the crime and the pretrial confrontation. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The court must balance these factors against the alleged corruptive effect of the identification procedure used. *Id.* at 114, 97 S.Ct. at 2253; *United States v. Thurston,* 771 F.2d 449 (10th Cir.1985).

Having reviewed the record with these factors in mind, the court finds the pretrial identification in the present case by both victims was reliable. The court does not accept petitioner's argument that the pretrial photo identification procedure tainted one victim's later identification of petitioner.[4] Under the facts, both victims had a substantial basis for making a strong and

(1979) (*admissibility* of test results indicating presence of blood, reference made to expert testimony that negative results would be conclusive).

positive identification of petitioner as their attacker.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is denied.

4. Victim S.S. was unable to identify petitioner in a photo array of six pictures on the day of the offense. She positively identified petitioner as her attacker in a photo array six days later. Both S.S. and T.J. positively identified petitioner during the trial.