UNITED STATES of America, Appellee,

v.

Matthew WILLIAMS, Jr., Appellant.

No. 78–1229.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 16, 1979.

Decided July 17, 1979.

Rehearing Denied Aug. 20, 1979.

Certiorari Denied Oct. 29, 1979.
See 100 S.Ct. 276.

Scott H. Robinson, of Gerash & Springer, Denver, Colo., for appellant.

Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo., (Joseph F. Dolan, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before SETH, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.

SETH, Chief Judge.

Matthew Williams, Jr. was convicted of robbing a branch of the Denver Midland Federal Savings and Loan Company in violation of 18 U.S.C. § 2113(d). He has taken this appeal and raises four reasons for a reversal.

Defendant urges that testimony as to photo identifications by the defendant's stepchildren was the fruit of an illegal search; that in-court identifications by two witnesses were impermissible because of pretrial suggestive confrontation; that rebuttal testimony by a Government witness was collateral; and that several witnesses discussed their testimony in violation of the trial court's sequestration instruction. Each issue was raised by motion before the trial court and evidentiary hearings were held on each motion except that concerning the rebuttal testimony.

We have reviewed the record, and must conclude that the trial judge did not commit prejudicial error, nor abuse his discretion.

At the time of the robbery, several customers, tellers, and the branch manager were present. They described the robber as a black, about 5'10", fairly young, slender, and wearing a nylon stocking mask with a fishing type hat that had a colored band around the brim. A surveillance camera recorded the event. The developed photos showed a man generally fitting the witnesses' descriptions. The following day FBI agents arrested three men in Las Vegas who were in possession of some of the traveler's checks taken at the robbery.

Matthew Williams became a suspect shortly thereafter on an informant's tip. Also, the defendant appeared in several surveillance photos taken at another bank wearing a hat similar to the one worn by the robber. FBI agents obtained a search warrant for the defendant's house to locate bait money, the clothes worn by the robber, and a gun. Two of the defendant's stepchildren were present at the house during the search. The agents testified that the children identified the defendant from the surveillance photos taken during the robbery. Matthew Williams was arrested seven months later.

The Government's case thus rested solely on identifications as the Government did not offer any other evidence linking defendant to the crime. Four bank employees identified him as the robber. The defendant took the stand and denied robbing the branch.

Prior to trial, the defendant moved to suppress the testimony relating to the children's identification of the surveillance photos. This was denied, and the agents testified that the children identified defendant from the photos. The defendant here argues that the affidavit in support of the search warrant is insufficient under *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; that the search was thus illegal, and urges that the testimony as to the stepchildren's identification was inadmissible under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Thus the admissibility of this testimony is argued on the issue of whether the search was valid, and thus on whether the affidavit supporting the warrant was sufficient. We will consider the matter in the same context since the parties have so presented it. The defendant states in his brief that the situation at the house was coercive of the children. The trial court found otherwise and we have no reason to disagree.

■ Probable cause for a search warrant is nothing more than a reasonable belief that the evidence sought is located at the place indicated by the law enforcement officer's affidavit. Affidavits, therefore, must be viewed with common sense and not subjected to hypertechnical scrutiny. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; *United States v. Haala,* 532 F.2d 1324 (10th Cir.); *United States v. Neal,* 500 F.2d 305 (10th Cir.). Accordingly, the affidavit must set forth facts and circumstances within the officer's knowledge supported by reasonably trustworthy information from which a magistrate may reasonably conclude the items sought are connected to the crime and located at the place indicated. Confidential informants are obviously important sources of information in many instances, and their identity cannot be disclosed. Thus *Aguilar* requires an indication of the informant's reliability and the circumstances supporting the informant's tip. If this information is insufficient, then *Spinelli* permits the magistrate to consider other facts and circumstances which corroborate the informant's tip. In this way, "the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589; *United States v. Sherman,* 576 F.2d 292 (10th Cir.); *United States v. McCoy,* 478 F.2d 176 (10th Cir.).

■ The affidavit in question is clearly sufficient under these standards. The search was to be at a particular place for items of clothing identified from the surveillance photo, a gun, and stolen traveler's checks, and bait money. The affidavit also explained the affiant's independent verification that Matthew Williams lived at the designated address. One, or possibly two, informants provided information linking the defendant to the items sought. An informant was personally acquainted with the defendant, knew where he lived, and allegedly saw an identical hat and handgun at the defendant's house. The affiant independently verified that the defendant lived at that address. Past reliability is alleged, and corroborating information supports the informant's tip. Probable cause was presented by the affidavit. The warrant was valid and the search was legal. The identification testimony was admissible.

The defendant maintains that two in-court identifications were inadmissible because of suggestive pretrial confrontation. This concerns the identification testimony by two bank employees who observed the defendant at the pretrial suppression hearing. The pretrial hearing was concerned with whether an in-court identification would be proper. The two employees were not asked to identify the defendant at this hearing. The trial court held a hearing on this issue, and after questioning these two witnesses, the trial judge determined their identifications to be admissible.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, the Supreme Court said:

"... [R]eliability is the linchpin in determining the admissibility of identification testimony. ... The factors to be considered are set out in *Biggers*, 409 U.S., at 199–200, 93 S.Ct. 375. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."

*Manson*, as well as *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, stand for the proposition that a suggestive confrontation does not in and of itself require suppression. The totality of the circumstances must be considered to determine whether sufficient independent basis for the identification leads one to conclude that the identification is reliable. This is the method or standard used by the trial court. *See United States v. Herring*, 582 F.2d 535 (10th Cir.); *United States v. Milano*, 443 F.2d 1022 (10th Cir.).

The record shows that the trial judge extensively questioned these two witnesses at the suppression hearing. Judy Jamieson, a loan officer, was within five feet of the robber. Lighting conditions were excellent and she stated that his facial features, although distorted by the nylon stocking, were distinguishable. She was the only witness who identified Matthew Williams from a photo array lineup which is not complained of here. She said that her recognition of the defendant at the pretrial hearing was based on what she saw during the robbery. Her close proximity to the robber, ability to describe physical characteristics, and previous photo identification provided ample basis for the trial court's finding.

Blanche Fall, the branch manager, saw the robber enter the bank and observed him throughout the robbery. He approached within fifteen feet of her desk. She did not pick anyone from the photo array lineup, but testified that height, weight, and posture were factors leading to her in-court identification of the defendant. Moreover, she testified that facial distortion was not so great as to prevent her from positively identifying the defendant. She was having a phone conversation when the robber entered and immediately told the other party to call the police. She activated the surveillance camera and watched the robber for the approximately two minutes he was in the bank. When he left through the front door, she ran out the back door in an attempt to watch his departure. She stressed her attentiveness and constant observation of the robber so that she could later identify him. The totality of the circumstances leads us to conclude that her identification was reliable and independent of the pretrial confrontation. The fact that she did not pick the defendant from the photo array lineup merely reflects on the weight of her testimony, not its admissibility. *United States v. Rizzo*, 418 F.2d 71 (7th Cir.), *cert. denied, Tornabene v. United States*, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260.

The third issue raised by defendant involves rebuttal testimony by Beverly Campanella, a bank teller, which contradicted the defendant's denial during cross-examination that he had ever been inside the East Colfax branch. Inquiry into this alleged error is limited to determining whether the trial court abused its discretion. *United States v. Seely*, 570 F.2d 322 (10th Cir.). We find no reversible error as to this testimony. If it was inadmissible, it was harmless error.

The defendant lastly maintains he is entitled to a new trial because several witnesses discussed their testimony in violation of the trial court's sequestration instruction. Defendant filed his motion with affidavits from his wife and stepdaughter after the jury returned the verdict. The

wife and the stepdaughter assert that they overheard the witnesses discuss their identification testimony in the hallway outside the courtroom during the trial. The trial court conducted an evidentiary hearing, and found that no violation had occurred, or, in any event, the brief colloquy heard by Wendy Oddo did not unduly affect the witnesses' testimony. The trial court noted the witnesses' demeanor, the wife's and the stepdaughter's position in a room adjacent to the hallway, and the conflict in their testimony. Substantial evidence in the record supports the findings. They are not clearly erroneous. Motions for a new trial are clearly within the trial court's discretion. *United States v. Maestas*, 523 F.2d 316 (10th Cir.). The record does not show any abuse because the transgression, assuming it was such, was not of a prejudicial nature as to warrant a new trial. *United States v. Johnston*, 578 F.2d 1352 (10th Cir.).

AFFIRMED.