**Michael ARCHULETA,**
**Petitioner–Appellant,**

v.

**Dareld KERBY, Warden, Central, N.M.**
**Correctional Facility,**
**Respondent–Appellee.**

No. 87–2117.

United States Court of Appeals,
Tenth Circuit.

Jan. 3, 1989.

Stephen P. McCue, Asst. Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

William McEuen, Asst. Atty. Gen. (Hal Stratton, Atty. Gen., with him on the brief), Santa Fe, N.M., for respondent-appellee.

Before HOLLOWAY, Chief Judge, ANDERSON and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Michael Archuleta appeals from an order of the United States District Court for the District of New Mexico denying his petition for a writ of habeas corpus. The issue on appeal is whether his due process rights were violated by the introduction at his trial of testimony concerning a show-up identification in which he was shown to witnesses while he was handcuffed and

seated in a police car and the introduction of a subsequent in-court identification by those witnesses. We conclude that his due process rights were not violated. Therefore, we affirm the district court's denial of habeas corpus relief.

In September 1985, petitioner was convicted by a jury of automobile burglary and larceny under $100.00 for breaking into a van and taking a bag full of quarters. He was sentenced to a total of two years in prison for the crimes. His sentence subsequently was increased to eight years after it was determined that he was an habitual offender. He appealed to the New Mexico Court of Appeals, which affirmed his conviction. The New Mexico Supreme Court denied certiorari. He then filed a petition for a writ of habeas corpus in the United States District Court for the District of New Mexico claiming that he had been subjected to an illegal search and seizure, that there was lack of probable cause for the arrest, and that the show-up identification was improper. The district court dismissed the petition pursuant to 28 U.S.C. § 2254, adopting the findings of a United States magistrate.

The relevant undisputed facts leading to petitioner's conviction are as follows. Philip Madrid III, and his father, Philip Madrid, Jr., operated a coin machine business in Albuquerque, New Mexico. On October 10, 1984, after completing their morning rounds, the Madrids were eating breakfast in a restaurant. Madrid III looked out the window of the restaurant and saw a man and a woman near the Madrids' van, in which the Madrids had left approximately $60.00 in quarters in a bank bag. Madrid III saw the man break the window of the van with a tire iron and reach into the van.

The Madrids then ran out of the restaurant and yelled at the man and the woman. Madrid III saw the face of the man and noticed that he had a bank bag tucked in his belt. Madrid III then chased the man and stopped the car in which the man was trying to escape. When the man got out of the car, Madrid III had an unobstructed view of him from about ten feet away and looked straight into his face. Madrid III then pursued the man on foot for about 500 yards, observing his build and clothing until he lost him in a trailer park. In total, Madrid III was able to observe the man for approximately two minutes.

When the police arrived at the scene of the crime, the Madrids gave them a description of the man who had broken into the van. Madrid III described him as approximately 5'9" tall, a Spanish male with dark hair and a mustache, wearing a black t-shirt with some type of emblem on it and blue jeans. Madrid, Jr. gave the police a similar description, although he estimated that the man was approximately 5'7" tall.

Based on the Madrids' description of the thief, the police detained Archuleta and brought him back to the scene of the crime approximately thirty minutes after the incident. The police displayed Archuleta to the Madrids while he was handcuffed and seated in the back seat of a police car, and the Madrids positively identified him as the perpetrator.

Before petitioner's trial, Archuleta's trial attorney moved to suppress any testimony concerning the show-up identification and any in-court identification by the Madrids. She argued that displaying Archuleta in a show-up identification while handcuffed in a police car among uniformed police officers was so suggestive that introduction of evidence of it would violate Archuleta's due process rights. She also argued that the suggestive show-up tainted any subsequent identification by the Madrids. The state conceded that the show-up was suggestive but argued that in the circumstances of this case it was reliable. The trial court admitted testimony regarding the show-up identification, and both Madrid III and his father made positive identifications of Archuleta at the trial. Archuleta contends that the introduction of this evidence violated his due process rights.

Initially, we must determine the appropriate standard of review. The Supreme Court has held that the ultimate conclusion of the constitutionality of identification procedures is a mixed question of law and fact and, as such, is subject to plenary review. *Sumner v. Mata*, 455 U.S. 591, 597, 102

S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982). Therefore, we review the *conclusion* that Archuleta's due process rights were not violated *de novo.* Nevertheless, as discussed below, there are a number of factual determinations made by the state trial court which underlie this conclusion.[1] These factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).[2]

In examining the constitutionality of an identification procedure, a court must address two issues. The first issue is whether the identification procedure is unnecessarily suggestive. In this case the district court found, and the state has conceded, that the show-up procedure *was* unnecessarily suggestive.

Even if an identification procedure is suggestive, the introduction of the identification evidence does not necessarily violate a defendant's due process rights. *United States v. Williams,* 605 F.2d 495, 498 (10th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 189 (1979). The central inquiry is "whether under the totality of the circumstances the identification was reliable." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *See also Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony").

The Supreme Court has set forth five factors to be considered when evaluating the reliability of identification procedures:

1. The opportunity of the witness to view the criminal at the time of the crime;
2. The witness' degree of attention;
3. The accuracy of the witness' prior description of the criminal;
4. The level of certainty demonstrated by the witness at the confrontation; and
5. The length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). *See also Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). This court must balance these five factors against the "corruptive effect" of the identification procedures in order to determine whether the identification testimony should have been suppressed. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253; *United States v. Thurston,* 771 F.2d 449, 453 (10th Cir. 1985).

An examination of the five factors in this case reveals that the identification procedure did not create a "very substantial

---

1. On the motion to suppress the identification testimony, the state trial judge specifically found that Madrid III had at least two face-to-face opportunities to view petitioner prior to the challenged show-up; that Madrid III's attention was "totally focused" on petitioner during the above face-to-face confrontations; that Madrid III's original identification was accurate; and, that the show-up occurred approximately thirty minutes after the break-in. Because petitioner has failed to establish by convincing evidence that these determinations are erroneous, we presume them to be correct. *See Ewing v. Winans,* 749 F.2d 607, 609 (10th Cir.1984).

2. Besides relying on the factual findings of the state trial court, the United States magistrate below reviewed the trial record and made the following factual findings:

   Mr. Madrid III identified Petitioner at the show-up with a high degree of certainty.... Mr. Madrid Jr. had two brief un-obstructed views in broad daylight of Petitioner's features, clothing and stature from distances of approximately forty and thirty feet; that Mr.

Madrid Jr.'s attention was focused on Petitioner at the time Mr. Madrid Jr. observed Petitioner immediately after the break-in; that Mr. Madrid Jr. unhesitatingly identified Petitioner at the show-up based on Petitioner's distinctive t-shirt and facial characteristics; and, that the show-up occurred approximately thirty minutes after the break-in....

The magistrate's factual findings are not entitled to the statutory presumption of correctness under section 2254(d). To the extent that they are based on live testimony of witnesses, the "clearly erroneous" standard applies. To the extent that the findings are based merely on the magistrate's review of the state record, the clearly erroneous standard does not apply with full force. *See Castleberry v. Alford,* 666 F.2d 1338, 1342 n. 2 (10th Cir.1981). Because we find that the magistrate's findings were based on its review of the trial record rather than on new testimony, we have conducted our own independent review of the record on these points.

likelihood of ... misidentification," *Neil v. Biggers*, 409 U.S. at 198, 93 S.Ct. at 381 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)), and therefore did not violate petitioner's due process rights.

First, the Madrids had ample opportunity to view the criminal at the time of the crime. Madrid III saw him through the restaurant window, confronted him face-to-face twice, and observed his features and build while chasing him. The total observation time was about two minutes. This is about the same amount of time that was held sufficient in *Manson* (two to three minutes). *See also O'Brien v. Wainwright*, 738 F.2d 1139, 1141 (11th Cir.1984) (close-up view for seconds was sufficient), *cert. denied*, 469 U.S. 1162, 105 S.Ct. 918, 83 L.Ed.2d 931 (1985); *United States v. Burnette*, 698 F.2d 1038, 1046 (9th Cir.) (twelve seconds of unobstructed observation at close range was sufficient), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983). Although Madrid, Jr.'s observation of the criminal was not as extensive, he testified that he had two brief, unobstructed views of the criminal's features, build, and clothing from thirty to forty feet away. Also, his description of the criminal was substantially similar to his son's description.

Second, both Madrid III and his father testified that their attention was focused on the criminal. Their ability to recall a number of descriptive details supports this testimony. The state trial court specifically found that Madrid III's attention was "totally focused" on the perpetrator.

Third, as the state trial court found, the Madrids' description of Archuleta was accurate. They accurately described him as a Spanish male with dark hair and a mustache, wearing a black t-shirt with an emblem and blue jeans. While it is true that they both overestimated his height and did not tell the police about his tattoos, these appear to be minor errors.

Fourth, the Madrids were very certain when they initially identified Archuleta as the criminal and when they testified at trial. Their identification has been unequivocal at all times.

Fifth, the Madrids identified Archuleta approximately thirty minutes after the crime. This is a very short interval of time, which adds to the reliability of the identification. This interval is much shorter than the seven months in *Neil* and the two days in *Manson*, which the Supreme Court held were not too long. *See also United States v. Shoels*, 685 F.2d 379, 385 (10th Cir.1982) (two month interval was not a substantial amount of time which would impede identification), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1370 (1983); *Lavernia v. Lynaugh*, 845 F.2d 493, 500 (5th Cir.1988) (identification over a year after crime was reliable); *United States v. Wilson*, 787 F.2d 375, 386 (8th Cir.) (four months was not too long), *cert. denied*, 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986); *United States v. Burke*, 738 F.2d 1225, 1229 (11th Cir.1984) (two months).

We conclude that all five factors support the reliability of the identification in this case and outweigh the suggestiveness of the identification procedure. Because the "totality of the circumstances" strongly indicates that the identification was reliable, we agree with the district court that the admission of the identification evidence did not deprive petitioner of due process.

AFFIRMED.