*627
 
 STEPHEN H. ANDERSON, Circuit Judge.
 

 Walter Thody appeals his conviction, after a jury trial, on two counts of bank robbery in violation of 18 U.S.C. § 2113(a), one count of possession of a firearm moved interstate after a felony conviction in violation of 18 U.S.C. § 922(g) and § 924(a)(2), two counts of use of a firearm during commission of a crime in violation of 18 U.S.C. § 924(c)(1), and one count of conspiracy in violation of 18 U.S.C. § 371.
 

 Thody contends that: (1) there was insufficient evidence to support his conviction on one of the counts charging use of a firearm; (2) his Fifth Amendment right to due process was violated when the court allowed certain witnesses to identify him at trial when those witnesses had previously identified him in a lineup that the parties concede was unconstitutional; and (3) there was insufficient evidence that the gun found in his possession had been moved in interstate commerce. We affirm.
 

 I. BACKGROUND
 

 On July 12, 1991, Cimarron Federal Savings Association in Muskogee, Oklahoma, was robbed of more than $50,000. Two men entered the building, one carrying a briefcase and the other holding an earpiece to his ear. The man (identified later as Thody) with the briefcase approached a teller, Doris Harshfield, opened the briefcase and revealed a police scanner. He then informed Harshfield that he was robbing Cimarron Federal and instructed her not to call the police because his companion would be monitoring the scanner. He showed Harshfield a gun tucked into his waistband, and informed her that he would use it should the scanner detect that an alarm had been activated. During the robbery both Harshfield and Stacie Dillard, another Cimarron Federal employee, complied with the robbers’ demands. Harsh-field and Dillard testified that they had unobstructed views of the robbers, and were in close contact with them for several minutes. Dillard also testified that she had been trained to remember the robbers’ appearances. A third employee, Hadee Louise Woods, also observed the robbery and was able to observe the robbers at close enough range to give a description of their facial features and clothing.
 

 On August 29, 1991, Cimarron Federal was again robbed by two men. They proceeded in the same manner as before, demanding money and using a police scanner. Harshfield and Woods recognized the two men from the prior robbery. Harshfield exclaimed “It’s him!” when she saw one of the two men approaching her teller window. On this occasion Woods was the employee that complied with the robbers’ demands and was in close enough proximity to them to give a detailed description of their facial features. One of the men showed Woods a police scanner. His only instruction to Woods when he showed her the scanner was, “This is a police scanner,” to which she responded, “I know.” Then he said, “Now remember, no bait money or dye packed money.” Úpon receiving back the briefcase filled with money; the same man said, “Now, remember, don’t pull any alarm for five minutes.” Similar instructions had been given to Harshfield during the July robbery. Neither man displayed a gun or otherwise indicated that he was armed.
 

 Two other employees, Shelli Jiles and Eileen Stinson, also had clear views of the robbers from about 30 feet away. Jiles and Stinson noted that an “old blue Cutlass” with Texas tags was parked outside Cimarron Federal, and wrote down its description and license number. Woods and Harshfield also noticed the same car during the second robbery, and Woods saw the men get into it. Harshfield wrote down its license number. Harshfield’s and Woods’ description of the car corroborated that of Jiles and Stinson.
 

 The robbers departed with $26,764.00. Immediately thereafter, Cimarron Federal employees called the police, reported the robbery and gave a description of the two men and the blue Cutlass along with its license number. The police dispatcher broadcast the descriptions. Several minutes later, Muskogee Police Officer Marion Bolding saw the car parked in a shopping
 
 *628
 
 center parking lot and also noticed two men that matched the description of the robbers walking south of the shopping center. Officer Bolding approached the men in his police car, stopped the car and told the men that he needed to talk to them. The two men ran from Officer Bolding. The officer saw one of the men, whom he later identified as Thody, pull a gun from his waistband. He then saw the two men accost a woman in the parking lot, force her out of her car and escape in the car. A high speed chase of 15-20 minutes ensued, during which the driver fired shots at the police. The chase ended only when an officer rammed the escape vehicle with his police car.
 

 Thody and McIntosh exited the vehicle and were arrested. Two nine millimeter pistols were found in the car, a Browning on the driver’s side and a Llama on the passenger side. The Browning was chamber loaded with a full clip. The Llama was found along with a clip of bullets, and was cocked and off safety. McIntosh was identified as the driver of the car; Thody was identified as the passenger. When arrested, Thody had two $500.00 bundles of $10.00 bills sticking out of his pocket. The following items were also retrieved from the car: a tearaway shirt, a clip-on tie, a briefcase containing $25,000, two wigs and a portable police scanner with an earplug.
 

 On September 6, 1991, before Thody was charged by federal authorities but after he was arraigned on state charges, agents of the Federal Bureau of Investigation, along with state law enforcement officials, conducted a police lineup at the Muskogee City/Federal Jail. Three of the employees of Cimarron Federal — Harshfield, Woods and Dillard — were present at the lineup. Although an attorney for Thody had already been appointed, he was not notified of the lineup, and consequently was not present. Furthermore, Thody was the only member of the lineup with facial hair.
 

 At the lineup Dillard, Harshfield, and Wood all identified Thody as a participant in both robberies.
 

 Before trial, Thody moved to suppress the lineup identifications and all other identifications made by the witnesses present at the lineup. The district court concluded that the lineup identifications themselves were constitutionally impermissible and should be suppressed, but that subsequent identification testimony by Cimarron Federal employees Harshfield, Woods, and Dillard would nevertheless be admissible. At trial Thody was identified by those individuals as one of the men who robbed Cimar-ron Federal.
 

 II. DISCUSSION
 

 A.
 
 Admissibility of Identification Testimony.
 

 Thody contends that in-court identifications of him by Harshfield, Woods, and Dillard violated due process because that testimony was based on seeing him in an impermissibly suggestive lineup.
 
 See United States v. Wade,
 
 388 U.S. 218, 240-41, 87 S.Ct. 1926, 1936, 18 L.Ed.2d 1149 (1967) (in-court testimony based on a constitutionally tainted lineup is inadmissible). The district court found, and the government does not dispute the fact,.that the lineup at which Harshfield, Woods, and Dillard saw and identified Thody was improperly conducted.
 
 [1]
 
 The court further found, however, that the improper lineup would not affect the independent reliability of in-court testimony by the witnesses, identifying Thody as one of the men who robbed Cimarron Federal.
 

 The ultimate conclusion of whether a defendant’s Fifth Amendment due process rights have been violated is subject to
 
 de novo
 
 review.
 
 See Sumner v. Mata,
 
 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982);
 
 see also United States
 
 
 *629
 

 v. Short,
 
 947 F.2d 1445, 1449 (10th Cir. 1991),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992);
 
 United States v. Buchanan,
 
 891 F.2d 1436, 1440 (10th Cir.1989),
 
 cert. denied,
 
 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990);
 
 Archuleta v. Kerby,
 
 864 F.2d 709, 710-11 (10th Cir.),
 
 cert. denied,
 
 490 U.S. 1084, 109 S.Ct. 2108, 104 L.Ed.2d 669 (1989);
 
 United States v. Jarrad,
 
 754 F.2d 1451, 1455 n. 2 (9th Cir.),
 
 cert. denied,
 
 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). The “dearly erroneous” standard applies with respect to the trial court’s factual findings “even when those findings relate to a constitutional issue.”
 
 Hernandez v. New York State,
 
 — U.S. -, 111 S.Ct. 1859, 1870, 114 L.Ed.2d 395 (1991);
 
 United States v. Ortiz,
 
 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986);
 
 see United States v. Stewart,
 
 867 F.2d 581, 584 (10th Cir.1989);
 
 Archuleta,
 
 864 F.2d at 711.
 

 The mere fact that a lineup is unnecessarily suggestive is not enough to forbid admission of in-court identifications made by the lineup witnesses. The suggestiveness of the lineup must create a very substantial likelihood of irreparable misidentification; in short, the tainted lineup must so affect the witnesses’ perceptions as to render their subsequent in-court testimony unreliable. “[Reliability is the linchpin in determining the admissibility of identification testimony.”
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977);
 
 Archuleta,
 
 864 F.2d at 711;
 
 United States v. Williams,
 
 605 F.2d 495, 498 (10th Cir.),
 
 cert. denied,
 
 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 189 (1979).
 

 One must assess the “totality of the circumstances” in order to determine whether the suggestive lineup created a substantial likelihood of irreparable misidentification and thus violated due process.
 
 See Neil v. Biggers,
 
 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972);
 
 Williams,
 
 605 F.2d at 498. The following factors, among others, are relevant in assessing whether the identification testimony is reliable despite the witnesses’ exposure to the person identified during an improper lineup:
 

 (1) The opportunity of the witnesses to view the criminal at the time of the crime;
 

 (2) The witnesses’ degree of attention;
 

 (3) The accuracy of the witnesses’ prior description of the criminal;
 

 (4) The level of certainty demonstrated by the witnesses at the confrontation; and
 

 (5) The length of time between the crime and the confrontation.
 

 Neil v. Biggers,
 
 409 U.S. at 199-200, 93 S.Ct. at 382;
 
 Archuleta,
 
 864 F.2d at 711;
 
 United States v. Williams,
 
 605 F.2d at 498.
 

 Applying these factors, we are satisfied that the identifications offered by Harshfield, Woods, and Dillard were sufficiently independent of the lineup to be reliable; that is, the suggestive lineup did not create a very substantial likelihood of irreparable misidentification. Each witness had an adequate opportunity to observe Thody closely during the two robberies. All three witnesses testified at the suppression hearing that at least once they were within a few feet of Thody, and that they were able to observe McIntosh and him for several minutes. Woods and Harshfield were within arm’s reach of Thody while complying with his instructions. The light was good, and there is no question that the attention of these three employees was riveted on Thody and his companion. Dillard testified that she had been trained to remember the descriptions of robbers. When the second robbery took place Harshfield immediately recognized Thody from the July 12 robbery, exclaiming to Woods, “It’s him!” The descriptions of the robbers given by Harshfield, Woods, and Dillard after the robberies also corroborated one another to the degree that descriptions of subtleties in nose size, presence or lack of facial hair, and hair color corresponded significantly.
 

 The witnesses were unequivocal, in their testimony, both at trial and at the suppression hearing. Despite attempts by defense counsel to unearth inconsistencies, no significant inconsistenciés materialized. Also, only one week separated the confrontation from the robbery.
 

 Accordingly, we conclude that the trial court did not err in finding the witnesses’
 
 *630
 
 testimony to be independently reliable, and that the admission of the challenged testimony did not violate Thody’s constitutional rights.
 

 B.
 
 Sufficiency of the Evidence: Use of a Firearm.
 

 Thody was convicted on two counts (one for each robbery) of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(e)(1). The statute provides in relevant part: “Whoever, during and in relation to any crime of violence
 
 [2]
 
 ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ..., be sentenced to imprisonment for five years____”
 
 Id.
 
 Mere possession of a gun during' the commission of such a crime constitutes use. The gun need not be displayed.
 
 United States v. McKinnell,
 
 888 F.2d 669, 674-75 (10th Cir.1989);
 
 see United States v. Moore,
 
 580 F.2d 360, 362 (9th Cir.),
 
 cert. denied,
 
 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978).
 

 Thody contends that as to the August 29, 1991, robbery the evidence was insufficient to support a guilty verdict on the section 924(c)(1) count because neither he nor his companion displayed or referred to a gun while they were inside the building.
 

 Evidence is sufficient if a reasonable jury could find the defendant guilty beyond a reasonable doubt.
 
 United States v. Le-vario,
 
 877 F.2d 1483, 1485 (10th Cir.1989). The evidence on appeal is examined in a light most favorable to the government.
 
 United States v. Alonso,
 
 790 F.2d 1489, 1492 (10th Cir.1986). All reasonable inferences and credibility choices must be made in favor of the jury’s conclusions.
 
 United States v. Massey,
 
 687 F.2d 1348, 1354 (10th Cir.1982). The evidence need not exclude every reasonable hypothesis of innocence so long as the evidence permits a conclusion of guilt beyond, a reasonable doubt. The trier of fact is free to choose among various reasonable constructions of the evidence.
 
 United States v. Edmonson,
 
 962 F.2d 1535, 1548 (10th Cir.1992).
 

 Applying those standards, we conclude that there was sufficient evidence from which the jury could rationally infer that Thody was armed while robbing Cimarron Federal on August 29, 1991. Testimony established that Thody displayed a pistol, tucked in the waistband of his trousers, during the July robbery. Furthermore, the two robbers’
 
 modus operandi
 
 for the July and August robberies was essentially identical: police scanner, disguises, instructions to employees, and actions while inside the institution.
 

 Minutes after the August robbery Thody pulled a pistol from his waistband when accosted by Officer Bolding, shots were fired during the ensuing chase, and pistols were recovered by the police at its conclusion. The woman whose car was commandeered at gun point by Thody and McIntosh testified that there were no pistols in her car before it was taken. Thus, it was an established fact that, immediately following the August 29 robbery, both Thody and McIntosh had pistols on them, along with other “tools of the trade” used in the robbery: the police scanner and disguises. They also had the stolen cash. While Tho-dy essentially argues that he and McIntosh robbed the institution and then armed themselves almost1 immediately after leaving the scene of the robbery, the jury could rationally infer from the evidence that Tho-dy had his pistol with him the entire time. Accordingly, the evidence was sufficient to support Thody’s conviction on the section 924(c)(1) count.
 

 C.
 
 Admission of the Gun as Evidence of Interstate Movement.
 

 Thody argues that the Llama nine millimeter pistol found on the passenger side of the getaway car was improperly admitted as proof that he used a weapon that had travelled in interstate commerce, in violation of 18 U.S.C. § 922(g). The government offers no other evidence to prove that the weapon had moved interstate, relying solely on the manufacturer’s “Made in Spain” marking on the gun itself. Thody contends that the stamp “Made in
 
 *631
 
 Spain” found on the butt of the gun is hearsay, and was thus inadmissible to prove the gun’s place of origin. However, he did not object to the admission of the weapon at the time it was offered as evidence. Rather, he raised the issue later in the trial as part of his Fed.R.Crim.P. 29 motion for a judgment of acquittal.
 

 When an objection is not timely made, appellate review of the admissibility of the evidence is governed by the “plain error” standard.
 
 United States v. Devons,
 
 764 F.2d 1349, 1353 (10th Cir.1985). A plain error is an error that is “ ‘obvious, or ... seriously affect[s] the fairness, integrity or public reputation of judicial proceedings ____’”
 
 Id.
 
 (quoting
 
 United States v. Atkinson,
 
 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). It is “ ‘error so “plain” the trial judge and prosecutor were derelict in countenancing it, even absent the defendant’s timely assistance in detecting it.’ ”
 
 Id.
 
 (quoting
 
 United States v. Frady,
 
 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982));
 
 see United States v. Saucedo,
 
 950 F.2d 1508, 1511 (10th Cir.1991) (the plain error rule is to be used only in those circumstances in which a miscarriage of justice would result);
 
 United States v. Lonedog,
 
 929 F.2d 568, 570 (10th Cir.),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991).
 

 There was no such error here. Furthermore, the manufacturer’s imprint in the gun is not hearsay. It is technically not an assertion by a declarant as contemplated by the Rule. For the foregoing reasons, the judgment of conviction is AFFIRMED. The mandate shall issue forthwith.
 

 [1]
 

 . There is some dispute between the parties as to whether the lineup violated Thody’s rights on Fifth Amendment due process (unduly suggestive lineup) or Sixth Amendment (absence of counsel) grounds, and whether the plain error standard of review applies. Our analysis proceeds on the Fifth Amendment ground advanced by Thody and addressed by the district court. However, our disposition of the issue would be the same regardless of the standard employed or the basis for the tainted lineup.
 

 [2]
 

 . Bank robbery is a crime of violence. 18 U.S.C. § 924(c)(3).