**Filed 3/15/96**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

————————————

| | |
|---|---|
| DANNY RAY BROWN, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | )       No. 95-6347 |
| | )  (D.C. No. CIV-94-1992-M) |
| RON CHAMPION, | )      (W.D. Okla.) |
| | ) |
| Respondent-Appellee. | ) |

————————————

**ORDER AND JUDGMENT**[*]

————————————

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

————————————

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

A jury convicted Danny Ray Brown of armed robbery of a Payless Shoe Store in Oklahoma City, and he was sentenced to twenty years in Oklahoma state prison. After exhausting the remedies available to him under Oklahoma state law, Mr. Brown filed a petition for a writ of habeas corpus

———

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 10th Cir. R. 36.3.

pursuant to 28 U.S.C. § 2254, alleging there was insufficient evidence to support his conviction and that he received inadequate assistance from trial counsel. The district court denied his petition. We affirm.

## I

Mr. Brown renews his contention there was insufficient evidence to support his conviction, primarily because the in-court identification by the shoe store clerk, Rebecca Gardner, was not sufficiently reliable. We disagree. Ms. Gardner testified that two men entered the store while she was straightening the merchandise. She greeted one of the men and then continued what she was doing. Ms. Gardner then went to the counter to "ring up" a purchase. After all the customers left, one of the two men, whom she described as the "taller man," walked up to the counter with some shoes. The "taller man" purchased the shoes. The "shorter man" then came up to the register and said "let's get some boots, man." The taller man told him to "show her the gun," and the shorter man said "huh?" The taller man repeated himself, and the shorter man brought out a handgun. Both men were standing in front of Ms. Gardner at the counter facing her. The taller man said "that's right, the money." Ms. Gardner handed him all the paper money in the register, and the taller man told her to "get the rest." Ms. Gardner reached under the counter and retrieved the key that opens the drawer where the extra change is kept. The shorter man went to the side of the counter to watch Ms. Gardner. Ms. Gardner gave the taller man twenty-five ones from the change drawer. The taller man again told Ms. Gardner to "get the rest," and she told him she would have to go to the safe in the floor. Ms. Gardner got down onto the floor, panicked when she could not open the safe, and told the shorter man not to shoot her because she is a single mother. The taller man told her to hurry up,

2

said she had to the count of ten, and started counting. The shorter man then said "there's a cop, man." The taller man told the shorter man to shoot Ms. Gardner, and the shorter man said "huh?" The two men then ran out of the store.

Oklahoma City Police Officer Jennifer Rogers saw two men walk out of the shoe store. She followed behind them slowly in her patrol car. They picked up their pace to a slow jog, threw down the bags they were carrying, and then started to run. The area was well lighted, and Officer Rogers got a good look at both men. The shorter of the two was wearing a dark jacket. The two men split up, and Officer Rogers followed and arrested the taller man. By that time, she had lost sight of the shorter man. She then retrieved the packages the men threw and found shoes and cash. Officer Rogers then returned to her patrol car to look for the shorter man. She found Mr. Brown a short distance away, identified him as the shorter man, and looked on as other officers arrested him. Mr. Brown was wearing the same clothing as the shorter man. During trial, she testified that at the time she arrested him, she "felt definitely" that Mr. Brown was the shorter man she saw leaving the shoe store. Officer Rogers identified Mr. Brown as the shorter man during trial.

Ms. Gardner looked at the shorter man only once during the robbery, when he walked up to the counter, told the taller man to get some boots, and then pulled out the handgun. He was a couple of feet away at the time. She saw the shorter man's face. After Officer Rogers arrested Mr. Brown, the police brought him back to the store. Ms. Gardner told the police she was not sure Mr. Brown was the shorter man. She later explained she did not want to identify Mr. Brown as the shorter man at that time because she had already identified the taller man, and if she misidentified Mr. Brown as

3

the shorter man, the taller man might not be convicted. Ms. Gardner did testify, however, that Mr. Brown and the shorter man had the same jaw, the same eyes, and the same dark jacket, and they were the same age, height, and build. The shorter man had his hair combed down toward his face, but Mr. Brown had his hair combed back when the police brought him to the store. During the preliminary hearing, Ms. Gardner identified Mr. Brown as one of the robbers, but later admitted she was not positive. She could not identify the individual she identified as the taller man after the robbery during the preliminary hearing. Ms. Gardner also identified Mr. Brown as the shorter man during trial as the shorter man, testified she was sure he was, and stated her identification was based on her memory of what the shorter man looked like during the robbery, not what Mr. Brown looked like during the initial show-up or the preliminary hearing.

In light of this evidence, we agree with the district court's conclusion that a rational trier of fact could conclude Mr. Brown was the shorter man involved in the robbery. *See Pilon v. Bordenkircher*, 444 U.S. 1, 2 (1979); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Nor was Ms. Gardner's in-court identification so unreliable as to violate the Fourteenth Amendment. *See Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972); *Archuleta v. Kerby*, 864 F.2d 709, 711 (10th Cir.), *cert. denied*, 490 U.S. 1084 (1989).

**II**

Mr. Brown also renews his contention he received inadequate assistance of counsel at trial, because his attorney stipulated that, if certain witnesses were called, they would testify that Mr. Brown had been convicted of three offenses, that the offenses were final, and that Mr. Brown had

an attorney. He also contends the stipulation was constitutionally inadmissible because the trial court failed to determine whether he had voluntarily consented to the stipulation. Again, we disagree. As for the inadequate assistance claim, there is no indication the prior convictions were invalid or would not have been admitted had the prosecution called the necessary witnesses. Indeed, the prosecution introduced an affidavit in district court stating it was prepared to introduce the judgments of conviction during the state trial. Thus, Mr. Brown suffered no prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Regarding the second claim, the trial court asked defense counsel whether he and Mr. Brown agreed to the stipulation and he responded that they did. This is sufficient under Tenth Circuit precedent. *See Johnson v. Cowley*, 40 F.3d 341, 346 (10th Cir. 1994).

The judgment of the district court is therefore **AFFIRMED**.

**Entered for the Court:**

_____
**WADE BRORBY**
United States Circuit Judge

5