**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 25 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff -Appellee,

v.

DONNY JACE HENNEFER,

    Defendant -Appellant.

No. 97-4179

(D.C. No. 96-CR-24-1)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **McKAY**, and **MURPHY**, Circuit Judges.

———————————————————

After examining the briefs and the appellate record, this panel unanimously has determined to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant Donny Jace Hennefer and his co-defendant, Lonnie Lee Moore, were arrested in connection with the robbery of a convenience store in Ogden,

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Utah. After the robbery, two persons were seen driving away from the convenience store in an El Camino which was light blue or grey.[1] When the El Camino was later located in a snow bank, Defendant had left the scene. However, a police officer traced Defendant's footsteps in the snow to a room in a nearby motel. Police apprehended Defendant at the motel and then brought several witnesses there to identify him. The witnesses who identified Defendant at the motel included Cathryn DeFoer and Brian Keith Wilks, store employees, and Chance and Eddie Butterfield, patrons of the convenience store who witnessed the El Camino leaving the store and later saw Defendant walking away from the El Camino in the snow. At trial, only the Butterfields made in-court identifications of Defendant.

Following a jury trial, Defendant was convicted on the following three counts: violating the Hobbs Act, 18 U.S.C. § 1951(a); using or carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). In this appeal,[2] Defendant challenges his convictions on the basis of evidentiary rulings

---

[1]During the trial in this matter, the color of the El Camino seen leaving the convenience store has been described in a variety of ways.

[2]Although Defendant filed his notice of appeal after the expiration of the 10-day period provided for in Federal Rule of Appellate Procedure 4(b), Respondent agrees that the delay was due to excusable neglect caused by the withdrawal of Defendant's counsel. Thus, this court has jurisdiction over this appeal, and we do not address the timeliness of Defendant's notice of appeal.

made by the district court.[3]

Defendant first asserts that the Butterfields' in-court identifications of him violated his Fifth Amendment due process rights because they were based on an impermissibly suggestive show-up identification. "The ultimate question of whether the admission of pre-trial identification testimony violates due process is reviewed de novo on appeal." Grubbs v. Hannigan, 982 F.2d 1483, 1489, n.5 (10th Cir. 1993) (citing Sumner v. Mata, 455 U.S. 591, 597 (1982) (per curiam)). However, "[t]he 'clearly erroneous' standard applies with respect to the trial court's factual findings 'even when those findings relate to a constitutional issue.'" United States v. Thody, 978 F.2d 625, 629 (10th Cir. 1992) (quoting Hernandez v. New York, 500 U.S. 352, 366 (1991)), cert. denied, 513 U.S. 907 (1994).

Evaluating the constitutionality of pretrial identification procedures involves a two-step analysis. First, we examine whether the procedure employed was unnecessarily suggestive. See Grubbs, 982 F.2d at 1489; Archuleta v. Kerby,

---

[3]Defendant also argues that he should not have been sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e), because "his prior convictions were not sufficiently distinct criminal episodes." Appellant's Opening Br. at 29. We do not address this issue because, as Appellant acknowledges in his brief, his argument is against controlling precedent. See United States v. Tisdale, 921 F.2d 1095, 1098-99 (10th Cir. 1990), cert. denied, 502 U.S. 986 (1991). Appellant raised this issue only "in order to preserve it for possible certiorari review." Appellant's Opening Br. at 29.

864 F.2d 709, 711 (10th Cir.), cert. denied, 490 U.S. 1084 (1989).  "If the procedure is found to have been unnecessarily suggestive, we must then weigh the corrupting influence of the suggestive procedure against the reliability of the identification itself."  Grubbs, 982 F.2d at 1489-90 (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)); see also Thody, 978 F.2d at 629 (stating that once a pretrial identification procedure is found to have been unnecessarily suggestive, reliability must be evaluated in light of the "'totality of the circumstances' in order to determine whether the suggestive lineup created a substantial likelihood of irreparable misidentification and thus violated due process").  A pretrial identification procedure does not violate due process unless it is "so unnecessarily suggestive that it is 'conducive to irreparable mistaken identification.'"  Grubbs, 982 F.2d at 1490 (quoting Kirby v. Illinois, 406 U.S. 682, 691 (1972)).  "[R]eliability is the linchpin in determining the admissibility of identification testimony."  Brathwaite, 432 U.S. at 114.

The district court's conclusion that the show-up identification employed in this case was unnecessarily suggestive is not in dispute.  The question is whether the Butterfields' in-court identifications of Defendant were unreliable because of the antecedent, unnecessarily suggestive show-up identification procedure.  The following factors are relevant in determining whether testimony is reliable in spite of being founded on an unnecessarily suggestive identification procedure:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Depending on the circumstances, "the degree of governmental complicity in a suggestive procedure" may also be a factor in assessing reliability. United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995). All of these factors "must be weighed against the corruptive effect of a suggestive pre-trial identification procedure to determine whether the identification testimony should have been suppressed." Grubbs, 982 F.2d at 1490.

With respect to the first and second factors, the record indicates that not only did the Butterfields have a sufficient opportunity to view Defendant at the time of the robbery but both of them devoted a significant degree of attention to ascertaining Defendant's identity. Each of the Butterfields saw the robber exiting the convenience store in well-lighted conditions, and, when they later saw Defendant walking away from the El Camino, they turned their own vehicle around and slowly drove past Defendant again so as to view him with a greater degree of scrutiny. Although it was after dark at the time, the Butterfields were within seven to fourteen feet of Defendant and were able to examine his clothing, hair, height, and even his eyes as they drove slowly past him. As to the third factor, Defendant contends that no evidence was offered to support the accuracy

of the Butterfields' prior descriptions of Defendant. While the evidence on this point may have been scant at the time of the suppression hearing, the Butterfields adequately described Defendant's vehicle, clothing, hair, and approximate age at trial. Thus, although this factor does not weigh heavily in favor of reliability, it does not require a determination of unreliability. The fourth factor is also satisfied because the record shows that the Butterfields demonstrated a substantial degree of certainty about Defendant's identity when police showed him to them at the motel. With respect to the fifth factor, Defendant suggests that a time period of one to two hours does not weigh in favor of either side. However, such a short period of time clearly weighs in favor of reliability. See, e.g., Grubbs, 982 F.2d at 1490 (stating that where confrontation occurred within a week of crime, identification was sufficiently reliable); Thody, 978 F.2d at 629 (determining that period of only one week between robbery and confrontation supported finding of reliability). Finally, Defendant contends that the Government influenced the suggestiveness of the show-up identification procedure because a police officer lied about the color of Defendant's eyes to Ms. DeFoer. However, there is no suggestion in the record that the Butterfields were misled in this manner. In light of these factors, we conclude that the district court did not err in finding that the Butterfields' in-court identifications were reliable notwithstanding the impermissibly suggestive show-up identification procedure.

Defendant also argues that the district court improperly admitted certain hearsay testimony. We review evidentiary rulings by the trial court for abuse of discretion. See United States v. Cass, 127 F.3d 1218, 1222 (10th Cir. 1997), cert. denied, __ U.S. __, 118 S. Ct. 1101 (1998). Under the abuse of discretion standard, we will reverse a district court's decision only when it is "'arbitrary, capricious, whimsical, or manifestly unreasonable.'" United States v. Hernandez-Herrera, 952 F.2d 342, 343 (10th Cir. 1991) (citations omitted).

Defendant challenges the testimony of Russell Hartley, who was called to testify by the Government. During cross-examination, Co-defendant Mr. Moore's counsel questioned Mr. Hartley, an employee of the convenience store, about a conversation he had with a defense investigator. See R., Vol. VI, Trial Tr. 7 at 95. Defendant did not object to this question. Mr. Hartley testified that Brady Antonich, a former employee of the convenience store, told him that he (Mr. Antonich) told the robbers where the safe was located. See id. at 95-96. On redirect, counsel for the Government asked Mr. Hartley the names of the persons to whom Mr. Antonich disclosed the location of the safe. See id. at 97. Mr. Hartley testified that Mr. Antonich told him that he told Defendant where the safe was located. See id. At this point, Defendant objected to the Government's question and moved to strike Mr. Hartley's response. See id.

Mr. Hartley's testimony describing his conversation with Mr. Antonich

-7-

most assuredly contains hearsay. The Government claims that, once the door to the hearsay testimony was opened, it was necessary to elicit testimony on redirect to "cure" the impression that Mr. Antonich was involved in the robbery. We decline to reach the issue of whether Mr. Moore's counsel opened the door to the testimony, because we conclude that the district court's admission of the testimony was harmless in any event. See Cass, 127 F.3d at 1225 ("A trial court's admission of inadmissible evidence will disturb a defendant's conviction only if the error is not harmless."); United States v. Tome, 61 F.3d 1446, 1455 (10th Cir. 1995) (noting that harmless error standard applies to erroneous admission of hearsay testimony). The harmless error inquiry focuses on "whether the admission of the statements substantially influenced the jury's verdict." Cass, 127 F.3d at 1225; see also Kotteakos v. United States, 328 U.S. 750, 765 (1946) (indicating that harmless error analysis requires asking whether the error itself substantially influenced the jury's verdict).

While Mr. Hartley's testimony may have led the jury to believe that Defendant knew where the safe was located, this information likely did not constitute a critical piece of evidence against Defendant. Abundant additional evidence in the record pointed to Defendant's guilt. As we discussed above, the Butterfields testified that they observed Defendant leaving the store after the robbery in well-lighted conditions and that they later saw Defendant walking

away from the get-away car in the snow. The Butterfields also testified that they confidently and accurately identified Defendant at a motel within a couple of hours after the robbery, and, at trial, they identified Defendant as the person they saw at the motel. Moreover, the record shows that police were able to track Defendant's footprints in the snow from the El Camino to the location where he abandoned his shotgun and knit cap and then to the specific motel room in which Defendant was apprehended. Cumulatively, this evidence leads us to conclude that the admission of the hearsay testimony was harmless.

In connection with his arguments regarding the district court's admission of hearsay testimony, Defendant also alludes to a violation of his constitutional rights under the Confrontation Clause. Because Defendant did not raise this objection at trial, we review it only for plain error. See Cass, 127 F.3d at 1225; United States v. Perez, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc). "Plain error is that which is obvious, or which seriously affects the fairness or integrity of the trial." United States v. Enjady, 134 F.3d 1427, 1435 (10th Cir.), cert. denied, __U.S.__, 119 S. Ct. 202 (1998). We conclude that the district court's admission of the hearsay evidence did not constitute plain error because the testimony did not seriously affect the fairness or integrity of the trial.

Defendant also argues that his convictions should be reversed because the district court failed to instruct the jury that it had stricken certain testimony from

the record. Specifically, Defendant objects to a statement made by Officer Tony Fox, who testified that when he arrived at the El Camino, he saw a brown paper bag containing "money from the robbery." R., Vol. VI, Trial Tr. 7, at 171. Defendant's counsel properly objected to the testimony because the prosecutors had not provided any foundational evidence connecting the money in the bag to the robbery. Although the district court later ordered the words, "from the robbery," stricken from the record, it did not so inform the jury nor did it instruct the jury to disregard the testimony.

After ruling that testimony should be stricken, a trial court judge ordinarily should deliver an appropriate instruction to the jury. The district court's inadvertent failure to do so in this case, however, is typical of errors that commonly occur at trial. Such errors are readily correctable by counsel. If counsel believes that the error is so serious that it threatens his client's substantive rights, then he should call it to the attention of the trial judge before the jury retires by, for example, again requesting an instruction. Under these circumstances, we review for plain error. Cf. United States v. Hill, 60 F.3d 672, 675 (10th Cir.) (indicating that review is for plain error where defendant fails to deliver contemporaneous objection), cert. denied, 516 U.S. 970 (1995); Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir. 1984) (stating that when an objection is not made before jury retires, court

reviews only plainly erroneous and prejudicial instructions), aff'd, 472 U.S. 585 (1985). We will not reverse the district court's readily correctable error unless it "placed the underlying fairness of the entire trial in doubt, or it affected one of the defendant's substantial rights." Hill, 60 F.3d at 675 (internal citations omitted). The stricken testimony at issue does not meet this standard. In addition to hearing Defendant's objection to Officer Fox's testimony along with an explanation of why the testimony was objectionable, the jury also heard the Government's concession that it had not established a direct connection between the money and the robbery. In light of these facts, we conclude that the district court's failure to instruct the jury that it had stricken or to disregard Officer Fox's testimony was not plain error.

Finally, we note that Defendant has properly objected to a special assessment of $100.00 per count, instead of $50.00 per count, on his three convictions. The incident from which Defendant's convictions stemmed occurred on February 4, 1996. The special assessment provision was amended on April 24, 1996, and therefore is not applicable to Defendant's convictions. See 18 U.S.C. § 3013; United States Sentencing Guidelines § 5E1.3 (special assessment is $50.00 for felonies committed prior to April 24, 1996). Defendant should have been assessed a $50.00 per-count penalty on each of his three counts, for a total of $150.00.

Defendant's convictions and sentence are AFFIRMED. The special assessment portion of the sentence is VACATED and REMANDED to the district court for resentencing in accordance with this opinion.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Entered for the Court

PER CURIAM

No. 97-4179, United States v. Hennefer

**McKAY**, Circuit Judge, concurring:

Although I concur in the outcome of this case, I write separately to express my disagreement with the court's treatment of the issue involving the trial court's admission of hearsay testimony. While my view is neither mandated nor forbidden by existing circuit law, I maintain that before engaging in the harmless error analysis, we must first address the merits of the issue presented to determine if in fact an error has been committed. Only after determining that an error has occurred would I proceed to the harmless error analysis.

In this case, I would first reach the merits of the issue raised by Defendant, namely, whether a defendant may open the door to testimony with respect to his or her co-defendant. Like the United States Court of Appeals for the District of Columbia Circuit, I would decline to extend the curative admissibility doctrine to encompass testimony elicited by co-defendants. See United States v. White, 887 F.2d 267, 270 (D.C. Cir. 1989) ("The prosecution may not gain, through the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on the happenstance that the door to admitting the evidence has been opened by a co-defendant."). But see United States v. Sullivan, 911 F.2d 2, 8 (7th Cir. 1990) (noting in dicta that cross-examination by counsel for co-defendant opened the door to redirect examination on the same subject by the government).

See generally 22 Charles Alan Wright & Kenneth W. Graham Jr., Federal Practice and Procedure § 5165 n.70 (Supp. 1998) (criticizing Sullivan as "egregious abuse" of the opening the door doctrine).  This court previously has explained that the doctrine of curative admissibility is "'dangerously prone to overuse'" and "is limited to the prevention of prejudice and used 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence . . . .'" United States v. Morales-Quinones, 812 F.2d 604, 610 (10th Cir. 1987) (citations omitted).

This situation, in which a co-defendant introduced inadmissible testimony that the Government then sought to use against Defendant, is a telling example of overusing the curative admissibility doctrine.  Defendant was not responsible for the admission of the evidence, nor did the evidence unfairly prejudice the Government to any meaningful degree.  While the hearsay testimony may have suggested that Mr. Antonich knew where the safe was located, it also indicated that the "robbers" knew where the safe was located.  For these reasons, I would hold that the district court erroneously allowed the Government to elicit inadmissible hearsay testimony on redirect.  Only after reaching this result would I proceed to the harmless error analysis.  Like the majority, I would then conclude that the admission of the hearsay testimony was harmless in any event.