Cecil **HALLMARK**, Petitioner,

v.

Tom **MARTIN**, Respondent.

No. 97–CV–567–H(J).

United States District Court,
N.D. Oklahoma.

Sept. 14, 2000.

---

1124

Cecil Wayne Hallmark, Hinton, OK, pro se.

Patrick T Crawley, Office of the Attorney General, State of Oklahoma, Oklahoma City, OK, for Tom Martin, respondents.

## *ORDER*

HOLMES, District Judge.

The Court has for consideration the Report and Recommendation (the "Report") of the U.S. Magistrate Judge entered on August 25, 2000 (Docket # 27), in this habeas corpus action brought pursuant to 28 U.S.C. § 2254. The Magistrate Judge recommends that Petitioner's petition for a writ of habeas corpus be denied. Neither party has filed an objection to the Report and the time for filing an objection has passed.

Having reviewed the Report and the facts of this case, pursuant to Rule 8(b) of the Rules Governing Section 2254 Cases and 28 U.S.C. § 636(b)(1)(C), the Court concludes that the Report should be adopted and affirmed.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Report and Recommendation of the Magistrate Judge (# 27) is **adopted and affirmed.**

2. The petition for a writ of habeas corpus is **denied.**

IT IS SO ORDERED.

*REPORT AND RECOMMENDATION*

JOYNER, United States Magistrate Judge.

TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND ........................................1125
II. EXHAUSTION OF STATE REMEDIES .............................. : ....1127
III. PROCEDURAL DEFAULT / PROCEDURAL BAR..........................1128
   A. THE CLAIMS PETITIONER RAISED FOR THE FIRST TIME IN HIS APCR, OTHER THAN HIS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM, ARE PROCEDURALLY BARRED..1128
     1. Cause and Prejudice ...........................................1129
     2. Fundamental Miscarriage of Justice ................................1129
     3. Petitioner's Ineffective Assistance of Trial Counsel Claim ...............1129
IV. PETITIONER IS NOT ENTITLED TO HABEAS ON HIS NON–DEFAULTED CLAIMS.........................................................1130
   A. INTRODUCTION ...............................................1130
   B. STANDARD OF REVIEW .........................................1130
   C. EVIDENTIARY HEARING ........................................1132
   D. PROSECUTORIAL MISCONDUCT..................................1132
   E. ONE–PERSON–SHOW–UP IDENTIFICATION ........................1135
   F. BURGLARY JURY INSTRUCTION .................................1135
   G. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ............1136
     1. Constitutional Standard .........................................1136
     2. Ineffectiveness of Appellate Counsel As Establishing Sufficient "Cause" to Permit the Court to Review Petitioner's Procedurally Barred Claims ....................................................1137
     3. Appellate Counsel's Failure to Raise *Flores* Issue on Petitioner's Direct Appeal to the OCCA .........................................1138

Now before the Court is Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently imprisoned in the Great Plains Correctional Facility, an Oklahoma State Penitentiary in Hinton, Oklahoma. Petitioner challenges the sentence he received on April 28, 1993 after being convicted by a jury in Tulsa County, Oklahoma in case number CF–92–5200. For the reasons discussed below, the undersigned recommends that Petitioner's petition for a writ of habeas corpus be **DENIED.**

## I. PROCEDURAL BACKGROUND

On April 7th and 8th of 1993, Petitioner was tried and convicted by a jury of the following offenses, with the jury recommending the following sentences: Count I, first degree rape, 75 years; Count II, first degree burglary, 12 years; Count III, attempted rape in the first degree, 23 years; and Count IV, sexual battery, 5 years. Petitioner was sentenced on April 28, 1993 in accordance with the jury's recommendation. Petitioner's sentences were ordered to run consecutively. Petitioner was represented at his trial by Charles Hamit, an attorney retained by Petitioner.

Petitioner filed a timely appeal from his April 1993 convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). Petitioner was represented on his direct appeal by Thomas Purcell, an attorney with the Oklahoma Appellate Indigent Defender's Officer appointed by the trial court. Petitioner raised the following errors/issues in his direct appeal:

I. The trial court's sentence was excessive;

II. The trial court erred by failing to order a pre-sentence investigation;

III. The trial judge erred in sentencing Petitioner in accordance with the jury's recommendation, and in finding that the sentences

should run consecutively, without exercising his own discretion;

IV. Juror misconduct and request for evidentiary hearing based on an allegation made by Petitioner at his sentencing that one of the jurors had a neighbor who was related to the victim;

V. Prosecutor engaged in misconduct when in his closing argument he appealed to societal alarm and the jury's sympathy for the victim;

VI. The trial court erred in failing to suppress the one-person-show-up identification of Petitioner by the victim on the night Petitioner was arrested and the victim was raped;

VII. Convicting Petitioner for rape, attempted rape, and sexual battery, because they were all based on the same criminal act or transaction, amounts to double punishment and violates the prohibition against double jeopardy; and

VIII. The trial court failed to correctly instruct the jury regarding the "breaking" element necessary for a conviction of first degree burglary.

*See* Doc. No. 20, Exhibit "A."

The OCCA considered Petitioner's direct appeal on the merits, and issued its opinion on November 22, 1995. The OCCA found merit in Petitioner's failure to order a pre-sentence investigation and double jeopardy arguments. The OCCA remanded the case with instructions (a) to dismiss Count III, attempted rape, and Count IV, sexual battery; and (b) to re-sentence Petitioner on Count I, first degree rape, and Count II, first degree burglary, after a pre-sentence investigation had been prepared. The OCCA rejected the remainder of Petitioner's arguments on the merits without discussion. *See* Doc. No. 20, Exhibit "B." Petitioner was re-sentenced on March 11, 1996 to 75 years on Count I, first degree rape, and to 12 years on Count II, first degree burglary.

These sentences were ordered to run consecutively.

Petitioner filed an application for post-conviction relief ("APCR") on August 26, 1996. Petitioner asserted the following issues/errors in his APCR:

A. Ineffective assistance of counsel at the trial and appellate levels;

B. The trial court used an erroneous "presumed not guilty" instruction, rather than a "presumed innocent" instruction;

C. Insufficient evidence to support a verdict for burglary, there being no evidence to establish the breaking or intent elements;

D. During the jury's deliberation, the trial court incorrectly answered a question posed by the jury regarding whether a phone message slip in evidence was found on Petitioner the night of his arrest;

E. The prosecutor engaged in misconduct by using the victim's identification testimony when the prosecution knew that the victim did not recognize Petitioner.

F. Insufficient evidence to support any conviction given circumstantial nature of the evidence; and

G. Denial of due process due to juror misconduct, and the trial court failed to hold an evidentiary hearing when the issue was raised at his April 1993 sentencing.

*See* Doc. No. 20, Exhibit "C."

The trial court denied Petitioner's APCR on November 4, 1996. The trial court determined that an evidentiary hearing was not required. The trial court determined that all of Petitioner's alleged errors were procedurally barred, except for his ineffective assistance of counsel claim. The trial court found that issues # C and # E were raised during Petitioner's direct appeal, and were, therefore, barred by the doctrine of *res judicata.* The trial court found that issues # B, # D,

# F and # G had been waived on an application for post-conviction relief because they could have been raised on direct appeal but were not, and Petitioner failed to offer a sufficient reason for his failure to raise these issues on direct appeal. The trial court then addressed Petitioner's ineffective assistance of counsel claim on the merits. Applying the test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the trial court found that Petitioner failed to establish the first element articulated in *Strickland* as to either his trial counsel or appellate counsel. That is, the trial court found that the performance of Petitioner's trial and appellate counsel was objectively reasonable under the circumstances. *See* Doc. No. 20, Exhibit "D."

Petitioner timely appealed to the OCCA the trial court's denial of his APCR. In his petition in error to the OCCA, Petitioner raised the same errors/issues he had raised in his APCR before the trial court, and argued against the trial court's application of *res judicata* and waiver to his claims. The OCCA affirmed the trial court's denial of Petitioner's APCR on February 7, 1997. Specifically, the OCCA affirmed the trial court's procedural bar of all of Petitioner's "non-ineffective assistance of counsel claims" on *res judicata* and waiver grounds. Unlike the trial court, the OCCA also found that Petitioner's claim that his trial counsel was ineffective was also procedurally barred (i.e., waived) because it could have been, but was not, presented in Petitioner's direct appeal. The OCCA then addressed on the merits Petitioner's claim that his appellate counsel was ineffective. The OCCA affirmed the trial court, finding that Petitioner's appellate counsel was not ineffective. *See* Doc. No. 20, Exhibit "E."

Petitioner filed his petition for a writ of habeas corpus with this Court on June 13,

1997. Petitioner raises the following claims/errors in his habeas petition:

1. Ineffective assistance of trial and appellate counsel—failure to object to "presumed not guilty" instruction, failure to object to biased jurors, and failure to object to any of the other issues raised in the habeas petition;

2. During the jury's deliberation, the trial judge incorrectly answered a question posed by the jury regarding whether a phone message slip in evidence was found on Petitioner the night of his arrest;

3. The trial court failed to correctly instruct the jury regarding the "breaking" element necessary for a conviction of first degree burglary.

4. Insufficient evidence to support a verdict for burglary, there being no evidence to establish the breaking element;

5. The trial court erred in failing to suppress the one-person-show-up identification of Petitioner by the victim on the night Petitioner was arrested and the victim was raped;

6. Generalized prosecutorial misconduct; and

7. Insufficient evidence to support any conviction given circumstantial nature of the evidence.

*See* Doc. No. 1. The Respondent filed his response to Petitioner's habeas petition on January 4, 1999.[1] *See* Doc. No. 20. After being granted an extension of time, Petitioner filed his reply on February 1, 1999. Petitioner's brief only addresses issues # 1, # 2 and # 5. *See* Doc. No. 23.

## II. EXHAUSTION OF STATE REMEDIES

Federal courts are prohibited from issuing writs of habeas corpus on behalf of

1. Respondent filed an earlier response on April 10, 1998, arguing that the habeas petition should be dismissed as untimely. *See* Doc. No. 9. On October 9, 1998, the Court rejected Respondent's statute of limitations argument, and ordered Respondent to respond to the merits of Petitioner's habeas petition. *See* Doc. No. 13.

prisoners in state custody unless and until the prisoner demonstrates either (1) that he "has exhausted the remedies available in the courts of the State," (2) that "there is an absence of available State corrective process," or (3) that "circumstances exist that render such process ineffective to protect the rights of the [prisoner]." 28 U.S.C. § 2254(b)(1). A prisoner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). *See also Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (discussing § 2254's exhaustion requirement).

Section 2254's exhaustion requirement is a federalism-based limitation on a federal court's discretionary power to issue a writ of habeas corpus. The exhaustion requirement is designed to give states the initial opportunity to address and correct their own alleged violations of federal law. The exhaustion requirement is satisfied only when the prisoner seeking habeas corpus relief has "fairly presented" the facts and the legal theory (i.e., the "substance") supporting his federal claims to the state's highest court. *Picard*, 404 U.S. at 275–76, 92 S.Ct. 509. *See also, Darr v. Burford*, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950); *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); and *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Respondent admits that "Petitioner has exhausted his state remedies." Doc. No. 20, p. 1, ¶ 1. Thus, all of the claims raised in Petitioner's habeas petition have been exhausted under § 2254(b).

## III. PROCEDURAL DEFAULT / PROCEDURAL BAR

If a state court applies an "independent and adequate" procedural rule to refuse to reach the merits of a constitutional claim (i.e., to procedurally bar a claim), a federal court will generally respect the state's procedural rule and also refuse to consider the constitutional claim in a petition for writ of habeas corpus. A state procedural rule is "independent" if it is separate and distinct from federal law. A state procedural rule is generally "adequate" if it is applied evenhandedly in the vast majority of cases. A federal court may, however, consider a procedurally barred claim if the petitioner can either (1) establish cause for the procedural bar and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a refusal to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 724, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995); *Gilbert v. Scott*, 941 F.2d 1065, 1067–68 (10th Cir.1991); and *Andrews v. Deland*, 943 F.2d 1162, 1190 (10th Cir. 1991).

## A. THE CLAIMS PETITIONER RAISED FOR THE FIRST TIME IN HIS APCR, OTHER THAN HIS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM, ARE PROCEDURALLY BARRED.

The OCCA refused to reach the merits of claims # 2 (trial court incorrectly answering jury question during deliberations), # 4 (insufficient evidence to establish breaking), and # 7 (insufficient evidence due to circumstantial nature of the evidence), holding that Petitioner had waived these claims by not raising them in his direct appeal. The OCCA's waiver rule is an independent and adequate procedural rule. The OCCA's waiver rule is not based on the federal Constitution or any other federal law. The OCCA's waiver rule is, therefore, "independent." The OCCA consistently and even-handedly applies its waiver rule to any claims, like Petitioner's, that are raised for the first time in an application for post conviction relief. *See* 22 Okla. Stat. § 1086. The

OCCA's waiver rule is, therefore, an "adequate" procedural rule. Thus, the Court must find that Petitioner's claims are procedurally barred, and the Court must refuse to consider the merits of Petitioner's claims unless Petitioner can establish either (1) cause for the procedural default (i.e., the failure to rise the issues on direct appeal) and actual prejudice, or (2) that the Court's refusal to consider Petitioner's claims will result in a fundamental miscarriage of justice.

### 1. Cause and Prejudice

To establish cause for failing to raise issues on a direct appeal to the OCCA, Petitioner must establish that some objective factor external to his defense impeded his efforts to comply with the OCCA's direct appeal requirement. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Adequate cause includes interference by officials which makes compliance with a state's procedural rule impracticable, and constitutionally ineffective assistance of counsel in not bringing a claim. *Worthen v. Kaiser,* 952 F.2d 1266, 1268 (10th Cir.1992). Petitioner must also demonstrate that he suffered actual prejudice. To show "prejudice," Petitioner must demonstrate "not merely that errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). *See also United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Other than making generalized references to the ineffectiveness of his appellate counsel, Petitioner has offered no "cause" for his failure to raise claims # 2, # 4 and # 7 on his direct appeal. The undersigned will discuss the merits of Petitioner's ineffective assistance of appellate counsel claim in more detail below. *See* Part IV(G)(2), *infra.* The undersigned finds, however, that Petitioner has failed to demonstrate the type of ineffectiveness of appellate counsel with respect to claims # 2, # 4 or # 7 that would constitute "cause" for his procedural default of those claims.

### 2. Fundamental Miscarriage of Justice

A federal court may proceed to the merits of a procedurally defaulted claim if the petitioner can establish that a failure to consider the claim would result in a fundamental miscarriage of justice. To come within this "very narrow exception," Petitioner must supplement his habeas petition with a colorable showing of factual innocence. Such a showing does not in itself entitle the petitioner to relief but instead serves as a "gateway" that then entitles Petitioner to consideration of the merits of his claims. Factual innocence means that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Demarest v. Price,* 130 F.3d 922, 941–42 (10th Cir.1997). Factual innocence requires a stronger showing than that necessary to establish prejudice. *Id.* at 326, 115 S.Ct. 851.

Petitioner has not argued his factual innocence, and he has offered no evidence in support of such a claim. His arguments are all directed at his legal innocence. Thus, the undersigned finds that the "fundamental miscarriage of justice" exception to the procedural default rule is not implicated by this case.

### 3. Petitioner's Ineffective Assistance of Trial Counsel Claim

The general rules regarding review of claims procedurally barred in state court do not apply to ineffective assistance of counsel claims brought under the Sixth Amendment to the United States Constitution. According to the Tenth Circuit, the general rule of procedural default "must give way because of countervailing concerns unique to ineffective assistance

1130

claims." *Brecheen v. Reynolds,* 41 F.3d 1343, 1363 (10th Cir.1994) (relying on *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). *See also Hooks v. Ward,* 184 F.3d 1206, 1213–15 (10th Cir.1999); *English v. Cody,* 146 F.3d 1257 (10th Cir.1998); and *United States v. Galloway,* 56 F.3d 1239, 1242–43 (10th Cir.1995) (*en banc*) (a § 2255 case). In *Brecheen* the Tenth Circuit focused on two factors which the Supreme Court has identified as unique to ineffective assistance claims—the need for a petitioner to consult with separate counsel on appeal in order to obtain a meaningful and objective assessment of trial counsel's performance; and the possible need to develop facts in support of an ineffective assistance claim. *Id.* at 1363–64. In *English* and *Hooks,* the Tenth Circuit held that a state's procedural rule will not be "adequate" as to ineffective assistance of counsel claims unless the state's procedural rule accounts for these two unique factors. *English,* 146 F.3d at 1261–63; *Hooks,* 184 F.3d at 1213–14.

The OCCA routinely refuses to hear all claims brought for the first time in an APCR, including ineffective assistance of counsel claims. The OCCA, interpreting the specific language of Oklahoma's post-conviction relief statute, 22 Okla. Stat. § 1086,[2] holds that any claim which could have been raised on direct appeal, but was not, is waived. The OCCA applied this precise waiver rule to Petitioner's ineffective assistance of trial counsel claim.[3] The

question is, therefore, whether the OCCA's waiver rule is "adequate" as it is applied to Petitioner's ineffective assistance of trial counsel claim.

The Tenth Circuit addressed the specific waiver rule applied by the OCCA to Petitioner's ineffective assistance of counsel claim in *Brecheen, English,* and *Hooks.* In *Brecheen,* the Tenth Circuit held that the OCCA's waiver rule is an "independent" procedural rule because it is not dependent in any way on federal law. In *English* and *Hooks,* the Tenth Circuit held that if trial counsel and appellate counsel are the same, the OCCA's waiver rule can never be "adequate" as to ineffective assistance of counsel claims. *English,* 146 F.3d at 1264; *Hooks,* 184 F.3d at 1214–15. If trial and appellate counsel differ, the OCCA's waiver rule will be "adequate" if "the ineffectiveness claim can be resolved upon the trial record alone." *English,* 146 F.3d at 1264.[4]

*Kimmelman, Brecheen, English,* and *Hooks* all stress the need for a petitioner to consult with separate counsel before filing a direct appeal in order to obtain a meaningful and objective assessment of trial counsel's performance. In this case, Petitioner had separate trial and appellate counsel. Thus, the first *Kimmelman* requirement for an "adequate" procedural default rule, as it applies to ineffective assistance of counsel claims, is met in this case.

. Section 1086 provides as follows:
All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application. 22 Okla. Stat. § 1086.

. The OCCA addressed Petitioner's ineffective assistance of appellate counsel claim on the

merits. Petitioner's appellate counsel claims are, therefore, not subject to the procedural default rules. The merits of Petitioner's ineffective assistance of appellate counsel claims are discussed below. *See* Part IV(G)(2), *infra.*

. In *English* and *Hooks,* the Tenth Circuit declined to decide whether the OCCA's waiver rule would be "adequate" if trial and appellate counsel differed but resolution of the ineffectiveness claim required development of facts not in the trial record. In both cases, the Tenth Circuit remanded so that the trial court could determine whether the OCCA's procedural rules would permit a supplementation of the record or additional fact-finding at the direct appeal stage.

■ Petitioner's ineffective assistance of trial counsel claim is premised on objections that his trial counsel failed to make during the course of the trial (e.g., failure to object to "presumed not guilty" and burglary jury instructions, failure to object to the seating of a biased juror, failure to object to the trial judge's answer to a jury question, and failure to object to statements of the prosecutor during his closing argument). The transcript of all phases of the trial was prepared, and a copy was provided free of charge to Petitioner and his appellate counsel prior to the filing by Petitioner of his direct appeal. The undersigned finds, therefore, that Petitioner's ineffective assistance of trial counsel claim could have been resolved on the trial record alone, without the need for further factual development. Thus, the second *Kimmelman* requirement for an "adequate" procedural default rule, as it applies to ineffective assistance of counsel claims, is met in this case.

Under the facts of this case, the undersigned finds that the waiver rule applied by the OCCA to Petitioner's ineffective assistance of trial counsel claim is both "independent" and "adequate." This Court is, therefore, bound to respect the OCCA's procedural rule and refuse to consider Petitioner's ineffective assistance of trial counsel claim on the merits.

## IV. PETITIONER IS NOT ENTITLED TO HABEAS ON HIS NON–DEFAULTED CLAIMS

### A. INTRODUCTION

The undersigned will review the following exhausted, non-defaulted claims raised in Petitioner's habeas petition: ineffective assistance of appellate counsel (part of claim # 1), improper burglary jury instruction (claim # 3), failure to suppress the one-person-show-up identification (claim # 5), and prosecutorial misconduct (claim # 6). Each of these claims was at some point addressed by the OCCA on the merits.

### B. STANDARD OF REVIEW

The standard of review for state habeas cases is as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based · on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ The Supreme Court has interpreted § 2254(d)(1) with the following language:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the· Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (O'Connor, J., speaking for a majority of the Court in her separate concurring opinion). *See also Thomas v. Gibson,* 218 F.3d 1213 (10th Cir.2000). The Court may not issue the writ simply because it concludes in its own independent judgment that the OCCA applied the law erroneously or incorrectly. Rather, the Court must be convinced that the application was also objectively unreasonable. *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 n. 4 (10th Cir.2000). It is this standard of review which the undersigned will apply to the OCCA's decision on the merits of Petitioner's exhausted, non-defaulted claims.

### C. EVIDENTIARY HEARING

Petitioner has not attempted to satisfy the elements of § 2254(e)(2), which outlines the requirements for an evidentiary hearing on Petitioner's habeas petition. The undersigned finds, therefore, that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing. *See Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); and *Miller v. Champion,* 161 F.3d 1249 (10th Cir.1998).

### D. PROSECUTORIAL MISCONDUCT

On his direct appeal to the OCCA, Petitioner argued that "[d]uring closing arguments, the prosecutor made a blatant appeal to societal alarm and to the jury's sympathy for the alleged victim." Doc. No. 20, Exhibit "A," p. 16. Petitioner argued to the OCCA that "[w]hen taken as a whole, the prosecutor's comments denied [him] of his right to due process of law and a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution." *Id.* at p. 17. Petitioner cited to the OCCA several of its own precedents in support his argument. *Id.* at 16–17. Petitioner does not address

prosecutorial misconduct in his brief before this Court. *See* Doc. No. 23.

■ On direct appeal to the OCCA, Petitioner pointed to the following prosecutorial statements as constituting error:

[The victim] had her turf ripped away. She had the rules dictated to her. The turf was ripped away with such severity, she couldn't even go back to it. (Tr. at 479)

But time to a person living a nightmare stops. (Tr. at 480)

I ask that when you consider the punishment for what is appropriate for the rape and the taking away of this woman's dignity to what will amount to the rest of her life, that you consider the 133 minutes of hell that she spent, the 7,980 seconds of an eternity of night that she didn't know how it was going to end. (Tr. at 483)

Let's talk about other coindences [sic]. State's 32 is the back of [Petitioner]. And on the back is a—what appears to be a very full figured, naked woman on his back left shoulder. They want to talk about his sexual orientations and his fantasies. (Tr. at 481)

The OCCA considered these comments on the merits and found that they did not deprive Petitioner of due process or a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution. *See* Doc. No. 20, Exhibit "B."

As a federal court reviewing a habeas petition, the Court's only role is to review the underlying state court proceeding for violations of the federal constitution. Federal courts will not, and should not, exercise general supervisory power over state court proceedings. Prosecution remarks which would provide grounds for reversing a federal conviction on direct appeal to a federal court of appeals, under that court's supervisory powers, may not necessarily provide grounds for the granting of a writ of habeas corpus. *See Brecheen v. Reynolds,* 41 F.3d 1343, 1355 (10th Cir.1994).

Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. *See Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). A prosecutor's improper comment or argument will require reversal of a state conviction only where the remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process. While "improper appeals to societal alarm" and requests for "vengeance for the community to set an example" are unwarranted, they are not the type of comments that the Supreme Court has suggested might amount to a due process violation. *See Darden v. Wainwright,* 477 U.S. 168, 181–82, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Brecheen,* 41 F.3d at 1355; and *Moore v. Gibson,* 195 F.3d 1152, 1172–73 (10th Cir.1999).

The undersigned does not condone prosecutorial remarks encouraging the jury to allow sympathy for the victim to influence its decision. However, after reviewing the entire trial record, the undersigned cannot conclude that the prosecutor's comments rendered Petitioner's trial fundamentally unfair. The comments in this case are certainly not as egregious as those at issue in *Moore*—a capital case in which the Tenth Circuit determined that there had been no constitutional violation. *See Moore,* 195 F.3d at 1172 nn. 10 & 11.[5] The undersigned finds, therefore, that Petitioner has failed to establish that the OCCA decided his prosecutorial misconduct claim in a manner that is contrary to established Supreme Court precedent, or in a manner that involved an unreasonable application of Supreme Court precedent to the facts of this case. Consequently, the undersigned recommends that Petitioner's habeas petition be denied as to his prosecutorial misconduct claim.

### E. ONE-PERSON-SHOW-UP IDENTIFICATION

■ Petitioner was arrested on the same night the victim was raped. After his arrest, Petitioner was transported by police vehicle to the victim's residence and brought onto the victim's front sidewalk/porch for identification by the victim. (Tr. at 197) While asking for the victim's identification, the officers apparently shined a flashlight in Petitioner's face. (Tr. at 175) There was also some evidence that the victim was still very upset at the time she made the identification. In fact, once she identified Petitioner, the victim asked the officer present whether she could borrow his gun to shoot Petitioner. (Tr. at 139) Petitioner argued on his direct appeal to the OCCA that, given the suggestive nature of the one-person-show-up used by the police and given the unreliability of the victim's powers of observation at the time of the identification, the trial court should have granted his motion to suppress any evidence regarding the victim's pre-trial identification of him. The OCCA considered Petitioner's argument on the merits and rejected it, finding no

5. The prosecutor in *Moore* made, among others, the following comments: (1) "[W]e don't really know what he did to her that evening." (2) "Can you imagine the terror, the fear that baby girl had when he snatched her. She cried for help there in the parking lot. And those may well have been the last words that ever came out of her mouth." (3) "What must have been going through that little girl's mind when he trussed her up with duct tape everywhere? ... And cut the clothing off her body." (4) "Nobody should have to go through the kind of terror he put that little girl through [.]" (5) "She was alone and scared and helpless, and she died in silence with his hands around her neck." (6) "The sort of pain and fear she experienced must be unimaginable." (7) "Can [the victim's parents] ever visit [her]?" (8) "We're giving him every benefit of the doubt, every right our justice system prevails. Jenipher didn't get any of those." (9) "She was totally innocent." (10) "There's no way little Jenipher could have been more innocent or less deserving of what happened to her on that night." (11) "[B]ring back a death verdict out of love for the [victims and parents] of the world and the future and the past victims of [petitioner]." *Moore,* 195 F.3d at 1172 n. 11.

error by the trial court in admitting the victim's prior identification.

The Court must examine two issues when determining whether an identification procedure is constitutional. The first is whether the identification procedure was unnecessarily suggestive. The second is whether, despite being unnecessarily suggestive, the identification was reliable under the totality of the circumstances. When examining the totality of the circumstances, courts should focus on the following factors: (1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Archuleta v. Kerby*, 864 F.2d 709, 710–11 (10th Cir.1989). "Only when a pre-trial identification procedure is so unnecessarily suggestive that it is 'conducive to irreparable mistaken identification' does the procedure violate due process." *Grubbs v. Hannigan*, 982 F.2d 1483, 1490 (10th Cir.1993) (citing *Kirby v. Illinois*, 406 U.S. 682, 691, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)).

**Opportunity of the Witness to View the Criminal at the Time of the Crime—** The victim in this case spent more than two hours with her assailant. (Tr. at 161) The victim and her assailant engaged in lengthy conversation during the attack. (Tr. at 124–31) The victim's assailant undressed and dressed in front of her, so she had a clear opportunity to see his clothing. (Tr. at 122, 133 and 137). The victim also had an opportunity to see her assailant 10 days before the rape, when he came to her home to give her landlord an estimate for a chimney repair. (Tr. at 161–62, 371–72, and 400–401) The victim testified that she was able to see her assailant's face and one of his tatoos in her darkened bedroom

because her bed was next to a window that was casting some light into the room, and because there was light coming into the bedroom from the hallway due to a bathroom light that had been left on for her sleeping child. (Tr. at 28, 172–173 and 176) At one point during the attack, the victim asked to go to the bathroom, and during a trip to the bathroom the victim testified that with the bathroom light on she was able to clearly see her attacker's face. (Tr. at 129–30 and 168–70) The undersigned finds, therefore, that the victim had a sufficient opportunity to view her attacker at the time of the crime.

**The Witness' Degree of Attention—** The victim testified that she had a friend who had been raped, and that her friend had told her that the only reason her attacker had been caught was because she had done everything the rapist had told her, and because she made an effort to remember everything she could about her attacker. The victim in this case testified that she remembered that conversation when she began to be attacked, and she made an effort to remember everything she could about her attacker. (Tr. at 122) Given that the attack lasted over two hours, and that the victim and her attacker spent much of that time lying on the bed talking, the victim had ample time to devote her attention to her attacker's appearance. The undersigned finds, therefore, that the victim had a high degree of attention on the night of her attack.

**The Accuracy of the Witness' Prior Description—** Within minutes of her attacker leaving, the victim called 911, and gave the dispatcher a description of her attacker. (Tr. at 137–38) The victim also gave a description to the initial officer on the scene, who also arrived within minutes of the criminal's departure. (Tr. at 250–51) The victim was able to describe her assailant's height, build, facial features (including light beard and mustache), one tatoo on the right biceps, and the clothing he was wearing. Every officer testifying at trial testified that the initial description

given by the victim matched the Petitioner identically as he appeared when arrested on the night of the victim's rape. (Tr. at 193–95, 202–203, 240, 246–47 and 254) The undersigned finds, therefore, that the victim gave an early and accurate description of her attacker which matched almost identically the person whom she later identified at the one-person-show-up.

**The Level of Certainty Demonstrated by the Witness At the Confrontation—** The victim and all of the officer involved with the show-up testified that the victim immediately identified Petitioner as her attacker. (Tr. at 139–40, 171–72, 198 and 255) There is no evidence that the victim hesitated, or that she was in any coached by the officers on the scene. The victim identified her assailant from 6–12′ away in the light—both from her porch light and possibly from a police officer's flashlight. (Tr. at 174–75, 204 and 216). The undersigned finds, therefore, that the victim had a high level of certainty when she identified Petitioner at the show-up.

**The Length of Time Between the Crime and The Confrontation—**based on the testimony from the victim and the testifying officers, there was less than an hour between the time the victim's assailant left her house and the time when officers brought Petitioner to her front porch for the show-up. The undersigned finds, therefore, that there was a relatively short period of time between the crime and the confrontation in this case.

Petitioner's claim fails to meet the *Biggers* and *Manson* standard. Although the undersigned agrees that the one-person "show-up" on the day of the rape was suggestive, an examination of the record as a whole, in light of the five factors identified by the Supreme Court, demonstrates that there is ample indicia of reliability to outweigh the suggestiveness of the initial identification procedure. The victim also steadfastly maintained her identification of Petitioner by identifying him again at trial as her rapist. (Tr. at 130) The undersigned finds further that

this case is controlled by the Tenth Circuit's holding in *Grubbs*. In *Grubbs*, the Tenth Circuit found that a pre-trial identification by a rape victim, with *Biggers* and *Manson* factors similar to those outlined above, was not unconstitutional. *Grubbs*, 982 F.2d at 1490. The undersigned finds, therefore, that Petitioner has failed to establish that the OCCA decided his unconstitutional identification claim in a manner that is contrary to established Supreme Court precedent, or in a manner that involved an unreasonable application of Supreme Court precedent to the facts of this case. Consequently, the undersigned recommends that Petitioner's habeas petition be denied as to his unconstitutional identification claim.

## F. BURGLARY JURY INSTRUCTION

On his direct appeal to the OCCA, Petitioner argued that the trial court incorrectly instructed the jury regarding the "breaking" element of the burglary offense with which he was charged. The trial court gave the following jury instruction regarding burglary:

> No person may be convicted of burglary in the first degree unless the state has proved beyond a reasonable doubt each element of the crime. These elements are: *First*, breaking; *Second*, entering; *Third*, a dwelling; *Fourth*, of another; *Fifth*, in which a human is present; *Sixth*, with intent to commit some crime therein.

Doc. No. 20, Exhibit "A," p. 25.

On his direct appeal, Petitioner argued that the trial court should have further defined the breaking element. Petitioner's argument was premised on his reading of the Oklahoma statute defining burglary—21 Okla. Stat. § 1431. Petitioner argued that § 1431 establishes three "modes" of breaking, and that these "modes" are exclusive. Petitioner argued to the OCCA that the trial court erred by not instructing the jury that the "breaking" must have been carried out in one of

the statutory modes identified in § 1431. Considering this argument on the merits, the OCCA rejected Petitioner's appeal on the basis of the trial court's burglary jury instruction.

Habeas relief is not available for errors of state law, and it is not the province of a federal habeas court to reexamine state-court determinations on state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). A federal court is bound by a state court's interpretations of state law. *Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. S 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975).

The trial court did instruct the jury that first degree burglary required breaking as an element to be proved beyond a reasonable doubt. The OCCA found that, under Oklahoma law, the trial court adequately instructed the jury regarding the breaking element of first degree burglary. This Court is bound to accept the OCCA's determination of Oklahoma law as to how burglary should be defined or refined under Oklahoma law. Petitioner has not established that the OCCA's interpretation of the "breaking" element under Oklahoma law impinges his rights under the Constitution of the United States. Consequently, the undersigned recommends that Petitioner's habeas petition be denied as to his improper burglary instruction claim.

### G. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

### 1. Constitutional Standard

Petitioner argues that his Sixth Amendment right to counsel was violated due to the ineffective assistance he received from his appellate counsel on his direct appeal. Specifically, Petitioner argues that his appellate counsel failed to raise several issues on direct appeal to the OCCA.

Petitioner's ineffective assistance of appellate counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally ineffective assistance of counsel, Petitioner must show (1) that his appellate counsel's performance fell below an objective standard of reasonableness, and (2) that his counsel's deficient performance was actually prejudicial to his defense/appeal. *Id.* at 687, 104 S.Ct. 2052; *Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir.1999).

To establish the first part of the *Strickland* test, Petitioner must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and that counsel's performance fell below an objective standard of reasonableness. The Court must review Petitioner's ineffective assistance claim from the perspective of his appellate counsel at the time counsel rendered his legal services. Scrutiny of counsel's performance must be highly deferential because it is all too tempting, with 20/20 hindsight especially after a defense has proven unsuccessful, to second-guess counsel's performance. Furthermore, the focus is not on what is prudent or appropriate, but on what is constitutionally compelled. *Sherrill*, 184 F.3d at 1175; *Strickland*, 466 U.S. at 688–90, 104 S.Ct. 2052. To establish the second part of the *Strickland* test, Petitioner must show that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Because the purpose of the Sixth Amendment's right to counsel clause is to ensure that a criminal defendant receives a fair trial, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the ... [proceedings] cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

### 2. Ineffectiveness of Appellate Counsel As Establishing Sufficient "Cause" to Permit the Court to Review Petitioner's Procedurally Barred Claims.

Petitioner alleged in his habeas petition that his appellate counsel was constitutionally ineffective for failing to raise the following issues on appeal: # 2 (trial court incorrectly answering jury question during deliberations), # 4 (insufficient evidence to establish breaking), and # 7 (insufficient evidence due to circumstantial nature of the evidence). The OCCA considered this ineffectiveness issue on the merits and rejected it. *See* Doc. No. 20, Exhibit "E." Although, Petitioner does not address the issue in his brief, this alleged ineffectiveness could serve as "cause" for the procedural default of these claims on the merits. *See* Discussion in Part III(A)(1), *supra.* The undersigned will, therefore, consider Petitioner's ineffective assistance of appellate counsel claim on the merits and to determine whether sufficient "cause" has been shown to overcome the procedural bar currently barring habeas review of Petitioner's claims # 2, # 4 and # 7 on the merits.

As Petitioner recognizes in his own brief, the process of winnowing out weaker arguments on appeal and focusing on those arguments which are more likely to prevail is "the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Counsel, both appellate and trial, must have wide latitude to make these types of tactical decisions. *Strickland,* 466 U.S. at 688–90, 104 S.Ct. 2052. It is for this reason that habeas petitioners must overcome

a strong presumption in favor of finding that a challenged action or inaction by counsel was a permissible exercise of trial strategy. *Id.*

■ On direct appeal to the OCCA, Petitioner's appellate counsel reviewed the entire trial transcript and raised eight errors. Petitioner's appellate counsel was successful on two of these errors, which resulted in (1) the reversal of two of Petitioner's sentences, (2) the lessening of Petitioner's sentence by 28 years, and (3) obtaining Petitioner a new sentencing hearing on his remaining convictions. While the undersigned recognizes that success on certain appellate issues does not itself foreclose an ineffectiveness of counsel claim, the success achieved by Petitioner's appellate counsel is some evidence that his performance was reasonable under the circumstances.

A review of the record also establishes that claims # 2 (trial court incorrectly answering jury question during deliberations), # 4 (insufficient evidence to establish breaking), and # 7 (insufficient evidence due to circumstantial nature of the evidence) were not "dead-bang winners." [6] With claims # 4 and # 7, Petitioner seeks to challenge the sufficiency of the evidence to support his convictions. The undersigned has reviewed all of the evidence presented at trial, and finds that an insufficiency of evidence argument would not necessarily have been a dead-bang winner on appeal.

With claim # 2, Petitioner argues that the trial judge incorrectly answered a question posed by the jury during its deliberations. Petitioner alleges as follows in his habeas petition:

> During jury deliberations the jury ask trial judge "if the phone message slip was on [Petitioner] at the time of ar-

---

6. In *United States v. Cook,* 45 F.3d 388 (10th Cir.1995), the Tenth Circuit held that "an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though

counsel may have presented strong but unsuccessful claims on appeal." *Id.* at 395. A "dead-bang winner" is "an issue which was obvious from the trial record, and ... would have resulted in a reversal on appeal." *Id.*

rest." Honorable Judge answered in the affirmative contrary to facts and evidence, placing Petitioner at the rape and burglary scene despite alibi defense.

Doc. No. 1, p. ˙6. There is absolutely no factual support in the record for this allegation. In fact, the trial record reflects the following exchange:

| | |
|---|---|
| THE COURT: | We're in the chambers. I have received a note from the jury .... First question[7] was, where was State's Exhibit Number 23 obtained from? PS, this is a matter of record. The attorneys are here. The defendant's not here. I take it you waive the defendant's presence? |
| MR. HAMIT: | Yes. |
| THE COURT: | Both parties have advised the Court prior to going on the record there was some testimony about this and we have agreed that the answer will be that, you have all the evidence. . |
| MR. ASHWORTH: | Yes, sir. |
| MR. HAMIT: | Yes, sir. |
| THE COURT: | That's what I am writing down. |

(Tr. at 485). There is, therefore, no evidence that the trial judge answered the jury's question affirmatively as alleged by Petitioner. Rather, the trial judge referred the jury to the evidence that was already before it. This issue would, therefore, clearly not have been a dead-bang winner on direct appeal.

■Based on a review of the entire record, the undersigned finds that Petitioner's appellate counsel's decision not to raise claims # 2 (trial court incorrectly answering jury question during deliberations), # 4 (insufficient evidence to establish breaking), and # 7 (insufficient evi-

dence due to circumstantial nature of the evidence) was the result of his tactical judgment as he winnowed out weak appellate arguments in favor of strong appellate arguments. Petitioner has offered nothing which establishes otherwise.

■ The undersigned finds, therefore, that Petitioner has failed to establish that the OCCA decided his ineffective assistance of appellate counsel claim, as it relates to claims # 2, # 4 and # 7, in a manner that is contrary to established Supreme Court precedent, or in a manner that involved an unreasonable application of Supreme Court precedent to the facts of this case. Consequently, the undersigned recommends that Petitioner's habeas petition be denied as to his ineffective assistance of appellate counsel claim for failing to raise claims # 2, # 4 and # 7. Having so found, the undersigned also finds that appellate counsel's alleged ineffectiveness also cannot serve as "cause" to overcome the procedural bar currently barring review of the merits of Petitioner's claims # 2, # 4 and # 7. *See* Part III(A)(1), *supra.*

### 3. Appellate Counsel's Failure to Raise *Flores* Issue on Petitioner's Direct Appeal to the OCCA

■ Petitioner alleges, and respondent does not dispute,[8] that the instructions given to the jury at his trial contained a "presumed not guilty" instruction rather than a "presumed innocent" instruction. Petitioner's appellate counsel filed Petitioner's brief on direct appeal on May 11, 1994, and he did not raise any issues in connection with the "presumed not guilty" instruction used at Petitioner's trial. *See* Doc. No. 20, Exhibit "A." On January 24, 1995, the OCCA decided *Flores v. State,* 896 P.2d 558, 562 (Okla.Crim.App.1995), which held that use of a "presumed not guilty" instruction amounted to a "consti-

---

**7.** The second question, and the only other jury question, was whether the jury could write on an exhibit or could use a dry erase board in the jury room. (Tr. at 485)

**8.** The jury instructions are not in the record.

tutionally impermissible lessening of the required standard of proof." *Id.* at 562. Petitioner's appellate counsel did not seek to supplement the appellate record on Petitioner's appeal to raise the *Flores* issue. Petitioner's direct appeal was decided by the OCCA on November 22, 1995. *See* Doc. No. 20, Exhibit "B." Petitioner filed an application for post conviction relief in April 1998 in which he raised the *Flores* issue, and the ineffectiveness of his appellate counsel for his failure to raise the *Flores* issue on his direct appeal. *Id.* at Exhibit "C." In ruling on Petitioner APCR, the OCCA found that the merits of Petitioner's *Flores* argument had been waived, and that under *Strickland* his appellate counsel was not ineffective for failing to raise the *Flores* issue on direct appeal. *Id.* at Exhibit "E."

In his brief in support of his habeas petition, Petitioner argues that even if the other issues his appellate counsel failed to raise could be viewed as permissible tactical winnowing, his failure to raise the *Flores* issue cannot be excused. Petitioner argues that the incorrectness of the "presumed not guilty" instruction used in his case was obvious. Petitioner argues the error is so obvious that even a lay person would recognize it as legal error. Thus, Petitioner argues that the *Flores* issue was a dead-bang winner on appeal, and that his appellate counsel was clearly constitutionally ineffective for failing to raise it. *See* Doc. No. 23, pp. 3–5.

Petitioner's argument has, however, been foreclosed by the Tenth Circuit decision in *Sherrill.* In *Sherrill* the Tenth Circuit considered the precise argument being raised by Petitioner and rejected it with the following language:

> [P]etitioner asserts that the basis of reversal recognized in *Flores* was obvious and should have been apparent to his appellate counsel even before *Flores* was decided. We disagree. In *Flores,* the

Oklahoma Court of Criminal Appeals noted that it had found only one other case involving an instruction that the defendant was presumed "not guilty." In that case, the instruction was upheld. *See* 896 P.2d at 562 n. 7 (citing *City of Bucyrus v. Fawley,* 50 Ohio App.3d 25, 552 N.E.2d 676 (1988)). Given the absence of specific authority to the contrary, it was reasonable for petitioner's appellate counsel to rely on the general principle that an instruction using the particular phrase "presumption of innocence" is not required to preserve a criminal defendant's constitutional right "to have his guilt or innocence determined solely on the basis of the evidence introduced at trial." *See Taylor v. Kentucky,* 436 U.S. 478, 485–86, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). While a presumption of innocence instruction helps guard that right, *see id.* at 486, 98 S.Ct. 1930, whether the right was violated depends on the totality of the circumstances of the case, *see Kentucky v. Whorton,* 441 U.S. 786, 789, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). Counsel's failure to forecast an appellate court's finding of constitutional violation in the circumstances of this case did not constitute performance falling "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. The alleged constitutional violation was certainly not obvious at petitioner's trial. Moreover, appellate counsel is not constitutionally required to raise every nonfrivolous or colorable issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987(1983); *LaFevers v. Gibson,* 182 F.3d 705, 722–23 (10th Cir. 1999). Petitioner's ineffective assistance of appellate counsel claim therefore has no merit . . . .

*Sherrill,* 184 F.3d at 1176 (footnote omitted).[9] *See also, de Yonghe v. Scott,* No.

---

9. In support of its holding, the Tenth Circuit pointed out that the Kansas Supreme Court had recently considered the same "presumed not guilty" issue that was considered by the OCCA in *Flores.* The Kansas Supreme Court completely disagreed with the OCCA. In fact

97–5062, 1998 WL 166075, at \*3–5 (10th Cir. April 10, 1998); *Burton v. Martin,* No. 98–7034, 1998 WL 694531, at \*1–2 (10th Cir. Oct.6, 1998); *Hampton v. Scott,* No. 98–5114, 1999 WL 436275, at \*5–6 (10th Cir. June 29, 1999); and *Cook v. Champion,* No. 98–5130, 1999 WL 586978, at \*5 (10th Cir. Aug.5, 1999).

In *Sherrill,* the OCCA decided *Flores* more than three years after Sherrill's direct appeal to the OCCA had been decided and his conviction had become final. This case could, therefore, be distinguished from *Sherrill* because *Flores* was decided during the pendency of Petitioner's direct appeal. The Tenth Circuit has, however, also considered this issue and found the distinction to be unpersuasive. *See Burton,* 1998 WL 694531, at \*1; and *Hampton,* 1999 WL 436275, at \*5–6. In *Burton* and *Hampton,* the OCCA had decided *Flores* after the defendants' appeals had been perfected and submitted, but before they had been decided. Noting that the OCCA's rules prevented counsel from supplementing an appellate brief on an issue not previously raised in the brief, the Tenth Circuit found that appellate counsel was not ineffective for failing to raise the *Flores* issue.

Petitioner has failed to demonstrate that his appellate counsel was constitutionally ineffective for failing to raise the *Flores* issue on direct appeal. Petitioner has also failed to establish that the OCCA decided his ineffective assistance of appellate counsel claim, as it relates to the *Flores* issue, in a manner that is contrary to established Supreme Court precedent, or in a manner that involved an unreasonable application of Supreme Court precedent to the facts of this case. Consequently, the undersigned recommends that Petitioner's habeas petition be denied as to his ineffective assistance of appellate counsel claim # 1.

### RECOMMENDATION

For the reasons outlined above, the undersigned recommends that Petitioner's petition for a writ of habeas corpus be **DENIED.** [Doc. No. 1].

### OBJECTIONS

Within 10 days of being served with a copy of this Report and Recommendation, a party may file with the Clerk of this Court specific, written objections to this Report and Recommendation. If a timely objection is filed, the District Judge assigned to this case will conduct a *de novo* review of those portions of this Report and Recommendation to which objection is made, and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. If no timely objection is filed, the District Judge may adopt this Report and Recommendation without any review. *See* 28 U.S.C. § 636(b)(1); Rules 8(b), 10 and 11 of the Rules Governing § 2254 Cases; and Fed.R.Civ.P. 72(b). Failure to file timely objections to this Report and Recommendation may bar the party failing to object from appealing to the Court of Appeals any of the factual or legal findings in this Report and Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Haney v. Addison,* 175 F.3d 1217 (10th Cir.1999); *Talley v. Hesse,* 91 F.3d 1411 (10th Cir.1996); *United States v. One Parcel of Real Property,* 73 F.3d 1057 (10th Cir.1996); and *Moore v. United States,* 950 F.2d 656 (10th Cir.1991).

Aug. 25, 2000.

---

the Kansas court held that a "presumed not guilty" instruction was the preferred burden of proof instruction in Kansas. *See State v. Pierce,* 260 Kan. 859, 927 P.2d 929, 936

(1996). As the Tenth Circuit pointed out, this split in authority suggests that the issue is not as clear as Petitioner would suggest. *Sherrill,* 184 F.3d at 1176, n. 3.